**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Larry COCHRUN, Defendant
and Appellant.**

**No. 16003.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 12, 1988.

Decided Jan. 4, 1989.

Thomas E. Adams, Deputy Public Defender, Northern Hills Public Defender's Office, Deadwood, for defendant and appellant.

R. Shawn Tornow, Asst. Atty. Gen., Pierre, Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief, for plaintiff and appellee.

SABERS, Justice.

Larry Cochrun (Cochrun) appeals his convictions for distribution of marijuana to a minor and delivery of drug paraphernalia. We affirm.

### Facts

On December 23, 1986, David Miller (Miller) reported to local police that his stepson, a minor, was in possession of a pipe and marijuana. The minor stated that he obtained the pipe and the marijuana from Cochrun. He told the police that Cochrun sold the marijuana from a container in Cochrun's home in Whitewood, South Dakota.

The police obtained a search warrant for Cochrun's home based on this information and an affidavit from the minor's friend, who was with him at the time of the purchase. The warrant described the items to be seized as marijuana or a green, leafy substance in a Tupperware or glass container. In the search of Cochrun's home, the police found five baggies of marijuana but not the container of marijuana.

Cochrun was indicted for distribution of marijuana to a minor "on or about December 23rd, 1986." He was later indicted for delivery of drug paraphernalia "on or about December 22nd or 23rd, 1986." At trial, the State attempted to prove that the minor obtained the marijuana pipe from Cochrun at approximately 11:30 a.m. on December 22nd. The State's witnesses testified that Cochrun sold marijuana to the minor at approximately 11:30 a.m. on December 23rd. Cochrun asserted an alibi defense through two witnesses who testified that Cochrun was in Spearfish from 11:00 a.m. to 1:00 p.m. on December 23rd.

Originally Cochrun represented himself, but counsel was later appointed from the public defender's office. He waived his right to a jury trial and was tried and convicted by the court on August 21st, 1987. Cochrun appealed pro se, claiming ineffective assistance of counsel. Cochrun's counsel also filed a notice of appeal and then filed a motion to withdraw which was denied. Cochrun's counsel assigned the case to another attorney in the public defender's office for the appeal.

### 1. *Admissibility of marijuana seized in search of Cochrun's home.*

Cochrun asserts that the State originally indicated that the marijuana seized under the search warrant would not be offered as evidence. Cochrun claims that this statement was a binding stipulation or admission upon the State.

Generally, stipulations are required to be in writing, but an oral stipulation made on the record in open court and relied upon by an adversary may be binding upon the party. *Aaker v. Aaker,* 338 N.W.2d 645 (N.D.1983); 73 Am.Jur.2d *Stipulations* § 3 (1974). There is no indication

that the statement in question was intended as a stipulation by the State. The State indicated, at the preliminary hearing, that there were no charges arising from the seized marijuana, but made no promise or commitment that it might not later amend these charges or attempt to admit the evidence. While Cochrun relied upon this statement, it did not rise to the level of a stipulation because it contained no promise or commitment. *Restatement (Second) Contracts* § 94 (1979). Further, Cochrun has not shown that his reliance was prejudicial to his case. Cochrun did not dismiss any witnesses, nor is there any indication that Cochrun would have prepared his case differently had he not relied upon the statement. Cochrun had an opportunity to contest, and did contest, the admissibility of the evidence through a motion in limine on the day of trial.

■ Cochrun claims that the marijuana was inadmissible because it was improperly seized under the search warrant. Cochrun cites the general rule that an item seized under a search warrant must be described with specificity. *State v. Wellner*, 318 N.W.2d 324 (S.D.1982); *State v. Nelson*, 84 S.D. 218, 169 N.W.2d 533 (1969). This court has created a "plain view" exception to the rule where a police officer uncovers other evidence of a crime in the course of a warranted search. *Wellner, supra; State v. Larkin*, 87 S.D. 61, 202 N.W.2d 862 (1972). *Wellner* set out two requirements to satisfy this exception:

> [T]he original search must be directed in good faith toward finding objects described in the search warrant. In addition, the police officer must have probable cause to believe the inadvertently discovered evidence is in fact seizable.

*Wellner, supra* at 329.

There is no showing that the authorities failed to proceed in good faith under the warrant. The warrant allowed the officers to search Cochrun's entire home and did not limit the search to particular rooms. In the course of the search, the officers came across the marijuana on top of a potting bucket in the bathroom. This was seizable as it was inadvertent and in plain view.

■ Cochrun also claims the marijuana was not relevant to the charge of selling to a minor. Cochrun cites no authority for this assertion. SDCL 19–12–1 provides that relevant evidence makes "the existence of any fact that is of consequence to the determination of the action more probable ... than it would be without the evidence." The five baggies, each containing approximately one-half ounce of marijuana tend to corroborate the charge that Cochrun was distributing marijuana. The State could and should have charged Cochrun with possession and offered the marijuana on that charge if they wanted it in evidence. However, we cannot say that the trial court erred in admitting the marijuana in view of its corroborative value and Cochrun's failure to cite any authority questioning its relevance. The trial court found that the probative value outweighed the danger of unfair prejudice to Cochrun under SDCL 19–12–3. Unlike the gun in *State v. Rufener*, 401 N.W.2d 740 (S.D. 1987), this evidence was relevant and this determination was within the sound discretion of the trial court. *State v. Grooms*, 399 N.W.2d 358 (S.D.1987); *State v. Cross*, 390 N.W.2d 564 (S.D.1986).

### 2. *Notice of specific time of offense.*

■ An indictment must be sufficient to apprise the defendant with reasonable certainty of the accusation against him. *State v. Bingen*, 326 N.W.2d 99 (S.D.1982). However, an information or indictment need not state the precise time at which an offense was committed, unless time is a material element of the offense or there is prejudice to the defendant. *State v. Swallow*, 350 N.W.2d 606 (S.D.1984). Although time is not a material element of these offenses, Cochrun claims the "on or about" language in the indictment prejudiced his alibi defense.

We have approved the "on or about" language in an indictment where the defendant asserted an alibi defense. *State v. Nelson*, 310 N.W.2d 777 (S.D.1981) approved a jury instruction which stated:

> The Information charges that the offense was committed 'on or about' a cer-

tain date and time. The proof need not establish with certainty the exact date or time of the offense alleged. It is sufficient if the evidence establishes beyond a reasonable doubt that the offense was committed on a date or time reasonably near the date or time alleged in the Information.

*Nelson, supra* at 779. The *Nelson* court held that such an instruction is valid if the jury is not misled. The state's proof in *Nelson* showed that the offense could have occurred on one of two days. The court asserted that the defendant needed an alibi for the entire period the crime could have occurred, as "Alibi evidence must show that the accused could not have committed the alleged crime, because at the time of its commission he was at a place other than where such offense was committed." *Nelson, supra* at 779–80 (*citing State v. Reiman,* 284 N.W.2d 860, 871 (S.D.1979)). The *Nelson* court held that the "on or about" language in the indictment provided sufficient notice to prepare an alibi defense.

The "on or about" language in this indictment was sufficient to apprise Cochrun of the approximate time of the crime to enable him to prepare his alibi defense. The State attempted to show that the crime of distribution of marijuana occurred at 11:30 a.m. on December 23rd. The trial court found that there was sufficient evidence that the crime occurred on the morning of December 23rd, and even though Cochrun was in Spearfish at 11:30 a.m. on that day, he did not have an alibi for the entire morning. There was sufficient evidence to support these findings. Therefore, the State's proof showed beyond a reasonable doubt that the crime occurred on the morning of December 23rd, despite the alibi.

### 3. Withdrawal of trial counsel for appeal.

■ Cochrun claims that his counsel should have been permitted to withdraw from representing him on appeal upon Co-

chrun's claim of ineffective assistance of trial counsel.* He claims this denial prejudiced his ability to assert the issue on appeal.

Ineffective assistance of counsel claims are not ordinarily considered on direct appeal, but should be brought through post-conviction relief. *State v. Aliberti,* 401 N.W.2d 729 (S.D.1987); *State v. Anderson,* 387 N.W.2d 544 (S.D.1986); *State v. Hammond,* 357 N.W.2d 278 (S.D.1984). This court has created an exception where the representation was so "ineffective and counsel's representation so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights[.]" *State v. Phipps,* 318 N.W.2d 128, 131 (S.D. 1982); *Aliberti, supra.* The ineffective assistance claim must rise to the level of plain error on direct appeal. *Aliberti, supra.* An examination of the record does not reveal a sufficient ineffective assistance of counsel claim. Cochrun's dissatisfaction with his court-appointed counsel is, without more, insufficient to overturn the denial of the motion to withdraw. *State v. Seiss,* 428 So.2d 444 (La.1983). Under this record, the trial court did not abuse its discretion. *State v. Taylor,* 211 N.W.2d 264 (Iowa 1973); *People v. Wolff,* 19 Ill.2d 318, 167 N.E.2d 197 (1960).

AFFIRMED.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

In *Swanson v. Department of Commerce & Regulation,* 417 N.W.2d 385 (S.D. 1987), in which I dissented, this Court approved obliteration of a plea bargain of an old rancher, notwithstanding government officials making representations to him. In essence, an old rancher was taken advantage of in law by one department of government telling him one thing and another department of government acting

---

* Cochrun requested new appellate counsel. This request was also denied but not raised on appeal.

contrary to the first department's word. Lest, as a reviewing Justice, I am caught up in a system which operates on its own ethic, working on in a mindless internal rhythm with little regard for principles of basic fairness in government officials, I again protest against government officials breaking their word. I am not so interested, as I review this case, or the *Swanson* case, to be wedded to legal precedent as I am to legal ethics. It strikes me that giving one's word, as a lawyer, representing the government, should be a companion with that which is good and just in the Law. There is a matter of public policy involved in a case such as this or in *Swanson*. That public policy is this: A defendant should be able to reasonably rely upon the word of a government official. "The prosecuting attorney must act fairly and diligently, seeking justice rather than convictions. In acting for the state, he represents all the people; he is not merely the adversary of the defendant. *He must avoid unfair trials*, and prevent innocent persons from suffering." 3 C. Torcia, *Wharton's Criminal Procedure*, § 419, at 137–38 (12th ed. 1975) (emphasis added; footnotes omitted). *See Jackson v. Wainwright*, 390 F.2d 288 (5th Cir.1968). As far as I am concerned, this is not simply another case of chopping legal wood, *i.e.*, old hat with supporting scopes of review. Of prosecutors, I would demand professionalism. If their word is not good, and they can trap the unwary, such action could portend great evil for our society. In time, if such conduct is approved by our courts of law, government might arrogate to itself the ultimate power to obliterate the freedom we have enjoyed.

With the above thoughts in mind, I point out that this defendant appeared pro se at a "Motions Hearing" on the 20th day of March, 1987. Thereat, an Assistant State's Attorney absolutely stated to this trial court and the defendant that the items seized under the search warrant (items not specified in the search warrant) would not be introduced as part of its case.

THE COURT: Oh, excuse me. The search warrant is here. Are any of the items seized under the search warrant part of your case?

MR. ELLINGSON: No, Your Honor.

THE COURT: All right. So there is no charges arising out of the items taken on the search warrant?

MR. ELLINGSON: No, Your Honor.

\* \* \* \* \* \*

THE COURT: The jury is not going to see anything on that search warrant because the State's Attorney has told me that there was nothing taken under that search warrant that's being offered in support of this charge.

MR. COCHRUN: The search warrant is not going to be used?

THE COURT: No.

[Motions Hearing, March 20, 1987, at pages 4 and 18.]

The search warrant contained an order to search for a plastic Tupperware type container containing a green leafy substance or marijuana and to also search for a glass container containing a green leafy substance or marijuana. A search of the residence resulted in the officer seizing, in the defendant's absence, a small brass pipe allegedly containing marijuana residue and six baggies of approximately one-quarter ounce containing a green leafy substance. A Tupperware container or glass container was not seized from the residence.

Defendant had a reasonable expectation of this government official keeping his word. This government official either sandbagged the defendant and his lawyer or just, out and out, did not tell the truth about his future course of action. If not these two actions, he certainly was crucially negligent in failing to fairly apprise defendant and his counsel—that evidence—like Lazarus from the tomb—would come forth.

Defendant, originally appearing pro se, subsequently had counsel appointed to defend him. Defense counsel filed a Motion in Limine on August 19, 1987 (two days before trial), to exclude the evidence taken pursuant to the search warrant. However, not until the day of trial, did the defendant and his lawyer learn that the government

official had no intention of standing by his earlier representation. Obviously, defense counsel and his client were very surprised for, on the same day the trial began, a ruling came forth immediately before trial that the evidence seized would now be admitted. In fact, Findings of Fact and Conclusions of Law were entered by the trial court on the date of trial. A decision by the trial court on a Motion in Limine is a ruling on evidence. *State v. Cochrun*, 328 N.W.2d 271 (S.D.1983). This changed the entire course of the defense strategy; it seriously ruptured plans of defense counsel and preparation of the case. For the majority opinion to characterize this dramatic development, on the day of trial, as not being prejudicial to defendant's case, is unrealistic, if not imaginary.

Rationale (reasoning) we employ as lawyers from the time we are fledgling law students. Let us review the majority's rationale. The majority opinion admits that defendant relied upon the representation of this government official; yet, the majority would have us believe that there was no "stipulation" because "it" (representations) contained "no promise or commitment." In point of time, defendant first relied on this representation; later, both defendant and his counsel relied upon the statement because he and his lawyer honestly believed that all of this evidence, these many items seized from his house, would not be introduced at trial, and thus did not prepare the defense to meet this highly damaging evidence. Yes, Defendant was denied a precious right: He was denied the right to prepare a defense, in advance of trial, because of a commitment or stipulation earlier expressed, on the record, before the trial judge. Can a prosecutor play cat and mouse with a defendant and his lawyer and leap upon his opponent, at the last second, and say, in effect, "aha, I've got you, forget what I said before, I'm putting in all items seized under the search warrant, you've had it." In my opinion, a lack of preparation for trial deprives any defendant of a fair trial guaranteed to him under the Sixth Amendment to the United States Constitution and Article VI, § 7, to the South Dakota Constitution. Defendant and

his counsel had a right to reasonably rely upon the word of the government official, and to marshal a defense around matters other than the evidence which was sprung upon them, like a cat springs on a mouse, in the last seconds before the trial begins.

After this pro se defendant obtained counsel, he signed a document waiving his rights to a jury trial. A trial judge was satisfied that defendant knowingly, intelligently, and voluntarily waived this right. Defendant and his counsel accepted a court trial. This case was then tried to the court. If, indeed, there is sufficient evidence for the trial court to make a determination of guilt, the fact that the improper evidence was received should not, by this Court, be considered reversible error. Perhaps a case could be made for the government that this inadmissible evidence was really cumulative and other admissible evidence supported the trial court's finding of guilt. Defendant did receive a three-year sentence to the South Dakota State Penitentiary on the charge of Distribution of Marijuana to a Minor and a six-month sentence to the Lawrence County Jail on a charge of Delivery of Drug Paraphernalia, both sentences to run concurrently. This case has a very peculiar procedural history because the Notice of Appeal was filed by the defendant's trial counsel on November 2, 1987. Thereafter, defense counsel filed a motion to withdraw as defendant's attorney. The trial judge denied this motion as well as a motion by the defendant's attorney to withdraw. This latter motion was apparently made because defendant was accusing his trial lawyer of ineffective assistance of counsel. In an effort to abstain from any further ethical complaint by the defendant, defendant's counsel, who was the Public Defender, assigned this case to another attorney in the Public Defender's Office, said latter attorney having prepared the briefs.

In reading the transcripts herein, I note that the prosecutor decided that he had changed his mind and had decided to use all of the evidence which was seized. His rationale was two-fold: (1) Defendant was not represented by counsel "at that time"

(*i.e.*, at the time of the representation); and (2) many things had happened since "that time," to include additional charges being lodged against defendant. However, if I have read the record correctly, the charges defendant originally faced were the charges he was ultimately convicted upon. Therefore, I cannot understand prosecutor's rationale.

Desiring not to place my imprimatur on government officials who make representations and then change their minds, without regard to the detrimental reliance of the general citizenry, I have thus written to depart from the blessing that the majority opinion inferentially gives to such type of conduct. Again, as I have pointed out in the past, without facts upon which to base a theoretical stance, a reader of legal opinions finds himself in a legal house without a foundation. This case is extremely troublesome to me because of the prosecutorial stance; however, although I believe that defendant and his counsel were unfairly treated, I do believe that there is sufficient evidence before the court to sustain its determination of guilt. Judge Johnson stated, on the record, when he ruled on the Motion in Limine, immediately antecedent to the trial, that he believed that he could, in effect, discount evidence in a court trial, such as the one that was about to take place, in his determination because, *inter alia,* he believed that he could be "fair." Improper evidence, duly received, in a court trial, is a far different breed of cat than improper evidence, received in a jury trial, which goes before a jury. In an action tried to the court, without a jury, many factors, which would be considered prejudicial in a case tried to a jury will not be so held. *Sabbagh v. Professional & Business Men's Life Ins. Co.,* 79 S.D. 615, 116 N.W.2d 513 (1962). Thus, I concur, for my own reasons, in this affirmance of a conviction and judgment.