STATE of South Dakota, Plaintiff
and Appellee,

v.

James SONEN, Defendant
and Appellant.

No. 17667.

Supreme Court of South Dakota.

Considered on Briefs March 19, 1992.

Decided Nov. 10, 1992.

Mark Barnett, Atty. Gen., Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Timothy J. Wilka of Wilka Law Office, Sioux Falls, for defendant and appellant.

WUEST, Justice.

James Sonen (Sonen) appeals his convictions for two counts of sexual contact with a child under sixteen years of age. We affirm in part and reverse in part.

## FACTS

D.M. (victim), age 15, lived in Coleman, South Dakota. During trial, he testified about a series of twenty to twenty-five incidents of sexual contact by Sonen, age 34, that occurred between the summers of 1989 and 1990. Victim first reported these incidents to the authorities in November 1990 and an investigation ensued.

On March 18, 1991, Sonen was indicted for three counts of sexual contact with a child under age sixteen (SDCL 22–22–7) [1] and three counts of contributing to the

1. The three counts were related to separate incidents that allegedly occurred on November 12, 1989; February 27, 1990 and April 6, 1990.

delinquency of a minor (SDCL 26–9–1). His jury trial took place on July 18 and 19, 1991. Sonen moved to dismiss all of the charges at the close of state's case. The trial court granted the motion as to the three counts of contributing to the delinquency of a minor but allowed the trial to proceed as to the three sexual contact counts. The jury ultimately returned guilty verdicts as to Counts I and III[2] and a not guilty verdict as to Count II. A judgment and sentence were entered accordingly and this appeal followed. Additional facts will be set forth as they pertain to the issues on appeal.

### ISSUE ONE

WHETHER SONEN WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL?

This court has often held that claims of ineffective assistance of counsel will not ordinarily be considered on direct appeal. The preferable means to consider incompetent counsel claims is through habeas corpus proceedings. There are many reasons for this rule including the fact that the attorney accused of incompetence is then provided an opportunity to defend his or her actions. An exception to the rule exists where representation at trial was so "ineffective and counsel's representation so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights[.]"

*State v. Aliberti*, 401 N.W.2d 729, 732 (S.D. 1987). (citations omitted). Or, as this court has summarized the above test, "ineffectiveness of counsel is an issue best raised on an appeal from habeas corpus proceedings unless trial counsel's actions amount to plain error." *State v. Wurtz*, 436 N.W.2d 839, 842 (S.D.1989).

■ Here, Sonen outlines several areas of alleged error by his trial counsel which he asserts rendered counsel's performance so ineffective and casual as to evince a manifest usurpation of his constitutional rights. As a result, Sonen contends these

errors require review of counsel's performance in this direct appeal. We disagree. As we said in *State v. Picotte*, 416 N.W.2d 881, 882 (S.D.1987):

We have examined the record and find that Picotte's claims of ineffective assistance do not rise to the level of plain error. *State v. Aliberti, supra.* Therefore we will not review Picotte's ineffective assistance of counsel claims under the test presented in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

After our examination of the record in the instant case, we reach a like conclusion. Therefore, we decline Sonen's invitation to review the effectiveness of his counsel's representation in this direct appeal.

### ISSUE TWO

WHETHER, THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT THE PROOF DID NOT HAVE TO ESTABLISH THE EXACT DATES OF THE OFFENSES WITH CERTAINTY?

The indictment specifically charged Sonen with three separate incidents of sexual contact allegedly occurring on November 12, 1989, February 27, 1990, and April 6, 1990. No "on or about" language was used. However, victim testified during state's case-in-chief that the November 12 incident actually occurred on November 13, 1989. Sonen offered alibi testimony for November 12, 1989 and February 27, 1990.

During jury instructions, the trial court instructed the jury:

The indictment charges that the offense was committed on a certain date. The proof need not establish with certainty the exact date of the offense alleged. It is sufficient if the evidence establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

Sonen objected to this "on or about" instruction which objection was overruled. He was subsequently found guilty of the November 12 and April 6 offenses but ac-

---

**2.** The incidents on November 12, 1989 and April 6, 1990.

quitted on the February 27, charge. He now asserts error in the giving of the "on or about" jury instruction because of the specific language of the indictment concerning dates; the indictment's failure to contain "on or about" language; and, the prejudice the instruction caused to his alibi defense.

■ Because Sonen was acquitted of the February 27 charge and offered no alibi for the April 6 charge, we find those counts of the indictment unaffected by his argument on this issue. As to the November 12 charge, we note that a similar argument was raised in *State v. Nelson,* 310 N.W.2d 777 (S.D.1981). In *Nelson,* the defendant was charged in an information with the theft of a horse trailer "on or about March 17, 1979[.]" *Nelson,* 310 N.W.2d at 779. However, state's proof during trial showed that the offense could have occurred on March 17 or 18, 1979. The defendant later produced alibi evidence for the date of March 17, 1979. On appeal, the defendant contended the trial court's "on or about" jury instruction deprived him of his alibi defense. We observed:

> "Except where time is of the essence, it is not error to give an instruction that submits the happening of the offense at anytime within the limitation period." The fact that an alibi defense is interposed does not, *ipso facto,* make the "on or about" instruction erroneous. Rather, this court must examine whether or not the jury is misled by the instruction into improperly rejecting the alibi.

*Nelson,* 310 N.W.2d at 779 (citations omitted). We concluded that, "[t]he [information] read 'on or about' the 17th. Appellant had an alibi for the 17th. The jury instruction explaining the phrase 'on or about' was not prejudicial to appellant in view of the fact that he needed an alibi for the 17th and 18th to be effective." *Nelson,* 310 N.W.2d at 779.

Although a jury instruction was not at issue in *State v. Cochrun,* 434 N.W.2d 370 (S.D.1989), the defendant did contend that "on or about" language in his indictment prejudiced his alibi defense. Rejecting that argument, we concluded the "on or about" language in the indictment was sufficient to apprise the defendant of the approximate time of the crime so as to enable him to prepare his alibi defense.

Here, in contrast with *Nelson* and *Cochrun,* no "on or about" language was used in the indictment. Rather, the incident was alleged to have occurred on a date certain, *i.e.* November 12, 1989. Neither *Nelson* nor *Cochrun* provide much guidance on what effect an "on or about" jury instruction has on an alibi defense when the charging instrument alleges the crime occurred on a date certain and alibi evidence is offered for that date. As support for its holding, however, *Nelson* relies in part on *State v. Siems,* 535 S.W.2d 261 (Mo.Ct.App.1976). *Siems* does address the propriety of jury instructions broadening the time of commission of the offense under circumstances more similar to those in the instant case. *Siems* provides in pertinent part:

> Except where time is of the essence, it is not error to give an instruction that submits the happening of the offense at anytime within the limitation period. Time is not of the essence in a crime of the nature here considered. However, the State has the burden of proof to establish the presence of the accused at the time and place of the offense. Therefore, when an alibi defense is interposed, time may be of decisive importance even though not of the essence of the offense. With the foregoing principles in mind, we find that the instruction given was not error. *When a specific date is presented as the date of the alleged crime, an instruction covering a broad period of time may not be given which would nullify an alibi defense supported by substantial evidence.*

*Siems,* 535 S.W.2d at 266 (citations and footnote omitted) (emphasis added).

*Siems, supra,* relies on *State v. Chittim,* 261 S.W.2d 79 (Mo.1953) as authority for its rule concerning jury instructions broadening the time of commission of the offense when a specific date is presented as the date of the alleged crime. *Chittim* was

charged in the first count of an information with the crime of molesting a minor with immoral intent, "on August 7, 1951[.]" *Chittim*, 261 S.W.2d at 79. During trial, the victim testified that she had had sexual intercourse with Chittim, "on August 7, 1951[.]" *Id.* at 80. Chittim denied having sexual intercourse with the victim on August 7, 1951, or at any other time. Five additional witnesses verified an alibi for Chittim on August 7, 1951. Chittim was, nevertheless, convicted and, on appeal, challenged a jury instruction broadening the time of the alleged commission of the offense. He contended the instruction ignored his alibi defense. The Missouri High Court held:

> Prosecutrix positively fixed August 7, 1951, as the date of the crime. The state tried the case on the theory that the act of intercourse took place on that date. In fact, the state objected to a question asked one of appellant's character witnesses because the question did not limit the time prior to August 7, 1951, which objection was sustained by the trial court.
>
> The issue presented by the state was that the act of intercourse took place on August 7, 1951, and that issue was accepted by the defense. Therefore, there was no foundation upon which to place an instruction as to any other time, as was done by the state. This instruction nullified appellant's alibi defense which was supported by substantial evidence.

*Chittim*, 261 S.W.2d at 80.

Here too, state's indictment presented a specific date as the date of the alleged crime, i.e., November 12, 1989. State tried its case on the theory that the incident of sexual contact in issue took place on that date. In fact, in his opening statement, the prosecutor specifically pledged the evidence would "pinpoint" the incident as having occurred on November 12, 1989. Nevertheless, Sonen denied any act of sexual contact with victim at any time. Three witnesses verified an alibi for Sonen on November 12, 1989. Thus, as concluded in *Chittim, supra,* the issue presented by state was that the act of sexual contact took place on November 12, 1989, and that

issue was accepted by Sonen in preparation of his alibi. The "on or about" jury instruction nullified his alibi defense which was supported by substantial evidence. For this reason, we reverse Sonen's conviction on the sexual contact charge alleged to have occurred on November 12, 1989, and remand for a new trial on that count of the indictment.

### ISSUE THREE

**WHETHER THE TRIAL COURT'S PARTICIPATION IN ESTABLISHING SEVERAL KEY ELEMENTS IN THE PROSECUTION DENIED SONEN'S RIGHT TO A FAIR TRIAL?**

When state concluded its direct examination of victim, the trial court called both counsel to the bench and an off the record discussion ensued. State then resumed its direct examination, asking several questions to clarify victim's use of certain slang terminology in describing the incidents of sexual contact. After cross examination of victim and after state indicated it had no redirect, the trial judge posed several questions regarding identification of Sonen and, in essence, had victim identify Sonen. During the next recess, Sonen moved for a mistrial arguing the trial court denied Sonen a fair and impartial trial by apprising state it should develop more specificity in its case on the elements of sexual contact and by establishing Sonen's identity with its own questions. The trial court denied the motion and, on appeal, Sonen again asserts the trial court's actions denied him a fair and impartial trial. We disagree.

■ SDCL 19–14–27 provides that: "The court may interrogate witnesses, whether called by itself or by a party. This power shall be used sparingly and only when the interests of justice require." Under this statute, we have held that, "the trial court 'may take reasonable measures to insure that the evidence is intelligibly presented to the jury. We hold that this includes the power to clarify evidence through the questioning of witnesses when in the exercise of sound discretion it is reasonably deemed necessary.' " *State v. Lien*, 305 N.W.2d

388, 389–90 (S.D.1981) (*quoting, State v. Cuevas*, 288 N.W.2d 525, 533 (Iowa 1980)).

*Cuevas, supra*, was an appeal of a murder conviction. During trial, the trial court asked several questions of a medical examiner appearing as state's witness to clarify convoluted testimony as to the time of the victim's death. In reviewing the denial of the defendant's mistrial motion, the Iowa Supreme Court observed:

> Here trial court acted only to clarify the evidence regarding the perimeters of time within which the death occurred. The underlying evidence of those perimeters had previously been presented. In other words, trial court did not undertake the introduction of evidence; it asked about nothing not already before the jury. We note, also, that trial court's questions were impartially framed with a view to "straighten the record out."

*Cuevas*, 288 N.W.2d at 533.

The same is true in the instant case. The trial court merely had state delve deeper into victim's use of certain slang phrases. The trial court acted only to clarify the evidence concerning sexual contact by mentioning to the prosecutor he wasn't sure the slang terminology made clear whether Sonen's acts fell into the elements of the offense. The underlying evidence of sexual contact had previously been presented by state with victim's use of the slang terminology. Thus, the trial court did not undertake the introduction of evidence because it had the prosecutor ask about nothing not already before jurors familiar with the slang phrases. Moreover, in contrast with *Cuevas*, the trial court itself did not ask the clarifying questions but allowed state to do the questioning in its own fashion, thereby avoiding any indication of bias to the jury. Thus, we hold that the trial court acted well within its power under SDCL 19–14–27 and committed no abuse of discretion in allowing state to clarify victim's use of the slang terminology.

■ As for the trial court asking the victim questions concerning identification of Sonen, a similar issue was recently confronted in *U.S. v. Morrow*, 925 F.2d 779 (4th Cir.1991). During the course of the jury trial in *Morrow*, the government's two witnesses were never asked if they saw the defendant in the courtroom. Therefore, the court asked both witnesses if they saw the defendant in the courtroom. When the witnesses answered affirmatively, the court asked where the defendant was seated and what he was wearing. Both witnesses pointed to and identified the defendant. On appeal, the defendant claimed he was denied a fair trial because, without the testimony elicited by the judge, he would have been entitled to a judgment of acquittal as he was never properly identified. The circuit court disposed of this argument stating:

> We cannot adopt such a strained view of the evidence. Officer Mulhall identified [the defendant] by name in answer to a question on cross-examination. The two questions by the trial judge were not necessary to complete the proof of the government's case. The judge did not unduly interject himself into the trial proceedings.

*Morrow*, 925 F.2d at 781. The circuit court went on to note the general rules on a trial court's authority to ask clarifying questions of witnesses (similar to those referenced in *Lien, supra*) and concluded:

> It has also been held that courtroom identification is not necessary when the evidence is sufficient to permit the inference that the defendant on trial is the person who committed the crime. *See United States v. Capozzi*, 883 F.2d 608 (8th Cir.1989). The record is sufficient to permit such an inference in the case before us. The trial judge did not abuse his discretion in asking the questions, and the asking of the two questions did not result in an unfair trial.

*Id.*

The facts of *Morrow* are nearly identical to those in the present case. State never asked victim if he saw the defendant in the courtroom. However, victim responded affirmatively to a question at the outset of his testimony concerning knowing Sonen and explained how he came to know him. In describing at least one of the incidents of sexual contact he referred to "Jim."

Thus, it was clear to the jury that victim was acquainted with and knew the defendant. Identical to the situation in *Morrow*, the trial court merely asked the following three questions concerning identification:

The Court: Just a couple short ones. Is the person you have identified as Jim or James Sonen present in the courtroom?

[Victim]: Yes, he is.

The Court: Where at?

Answer: Sitting right to the left of [defense counsel].

The Court: What's he wearing?

Answer: A blue shirt, blue pants, cowboy boots.

These questions were limited, they showed no bias and they were neither suggestive nor leading. Accordingly, as in *Morrow*, we hold that the trial court did not unduly interject itself into the trial proceedings and that the three short questions did not result in an unfair trial.

Based upon the foregoing analysis, we reverse Sonen's conviction for the sexual contact offense alleged to have occurred on November 12, 1989 and remand the matter for further proceedings. However, we affirm Sonen's conviction for the offense that occurred on April 6, 1990.

Affirmed in part. Reversed and remanded in part.

MILLER, C.J., and AMUNDSON, J., concur.

HENDERSON, and SABERS, J., concur specially.

HENDERSON, Justice (specially concurring).

According to the trial transcript, the trial court, sua sponte, reminded the prosecutor that it did not prove all of the elements of the various charges, namely:

1. State did not show an actual touching of victim by Sonen;

2. State did not place into evidence the identity of Sonen during the trial, in open court;

3. State failed to establish venue.

The trial judge may take reasonable measures to ensure that evidence is intelligibly presented to a jury but this should be restricted to an exercise of sound discretion when it would appear to be reasonably necessary. *State v. Lien*, 305 N.W.2d 388 (S.D.1981).

Surely, the trial court's authority is not unbounded and should be tempered by a requirement that the trial judge remain impartial throughout the proceedings. *State v. Foard*, 355 N.W.2d 822 (N.D.1984).

Each charge against Sonen alleged the venue to be in Moody County. Concerning one of these charges, during the initial direct examination, the witness stated that he and the defendant "... went to Trent ... down to the radio tower ... that's just one mile west and probably 2 miles south from the Junction, and we stopped on that hill." Such a statement does not geographically fix any crime in Moody County, as portrayed in the other special concurrence. Now, perhaps, the trial judge could take judicial notice that Trent is in Moody County; however, Trent is a very small agricultural community, within a very few miles of the Minnesota state border, and this alleged crime was out in the country. In other words, it was strictly a country setting. It is obvious that the State's proof was defective as to venue. The trial court permitted, after the bench conference, the State to ask additional questions, whereupon the witness reiterated the same geographical location but further expressed: "He stopped on a hill by that tower and we pulled down our pants ..." In attempting to shore up the deficiency, the State's Attorney referred to no county or state but, rather, asked the generic question to the witness "What happened?"

Here, State failed to prove its case. Before the State closed its case, the trial judge invited defense counsel and the prosecutor to the bench and advised the prosecutor of the above deficiencies in the State's case. Thereupon, the State was permitted to immediately present additional evidence and establish the crucial elements

which were previously omitted.*

When does a trial judge step over the line and become a participant in the advocates' roles? Ordinarily, the umpire is to call the balls and strikes and not play first base. *See, People v. Strickland*, 79 Mich. App. 454, 263 N.W.2d 11 (1978); *see also, State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988).

It is axiomatic that a trial judge pierces his veil of impartiality when he becomes an active participant for one party and against the other party. A trial judge should not go so far as to act as the prosecutor. He should not become an arm of the prosecution. I question highly that the trial judge, in this case, *openly* displayed bias towards Sonen as advocated by appellant's counsel in briefing to this Court. In my opinion, the trial court was attempting to prevent a miscarriage of justice, as he viewed the evidence. Certainly, the trial judge here had the right to clarify evidence; but neither he, nor any judge, should initiate evidence. One of the saving aspects of this case, to prevent reversal, is that the trial judge permitted State to do the questioning, with exception of the three questions concerning identification. *See*, 93 Harv. L.Rev. 633, 650 (1980) wherein the article reflects that a trial judge must resort " . . . always to the least intrusive measure adequate to the need." A reason for this is found in a statement at 48A C.J.S. *Judges* § 36 (1981):

> In carrying out his duties, a judge must be fair and impartial, and conduct himself in court in a manner which promotes public confidence in the integrity and impartiality of the judiciary . . . *Appearance from which favored treatment can be deduced,* even without real foundation, can be very harmful to the administration of justice. (Emphasis supplied mine).

I would remind the trial bench of South Dakota that the power to interrogate witnesses is to " . . . be used *sparingly* and only *when the interest of justice requires.*" By judicial fiat, through this Court's 1981 decision in *Lien,* this Court

has expanded the power to "clarify evidence." Therefore, in my opinion, if evidence has come into the record which is sketchy or convoluted or poorly presented, a trial judge can clarify the evidence by questioning. This does not mean, in my opinion, that the trial judge should go into altogether new matters, not previously touched upon to some degree.

This case comes dangerously close to a trial judge assuming a partisan role, in light of the fact that the State had failed to prove up its case (by the trial court's own assessment). I specially concur to caution the trial bench of this state to remember that the robe should not get down into the arena.

### CAVEAT

After my research and writing in this case, unveiling other applicable authorities to the subject addressed, a special concurrence was filed to traduce this special concurrence. This attempt to academically dilute my special concurrence does not square with the courtroom scene: If the state had established its case beyond a reasonable doubt *why* did this trial judge deem it vital to call counsel to the Bench, yes, in front of the jury, have a conference thereat, and point out such evidentiary matters (which the trial judge apparently thought was inadequately presented) such as (1) touching (2) identity and (3) venue? This case, like many criminal trials, was in the throes of critical proof. This bench conference took place in the full view of the jury. In my opinion, such a conference should not have been viewed by the jury. The jury could reasonably infer that the trial judge was aiding the jury to facilitate a conviction. At the bench conference, sua sponte initiated by the trial judge, the proof deficiencies were apparently brought out; the briefs of the state and appellant so suggest. There are various means to communicate. Jurors perceive actions of a trial judge in arriving at a verdict. It can be a shrug, scowl, smile, or look of disdain. It can also be a sua sponte conference at the Bench, followed by immediate questioning.

---

* State had not "closed" its case at this juncture.

An appellate court has a responsibility to raise the consciousness of the trial bench. I sought to do so by my special concurrence and to better this state's jurisprudence.

Upon occasion, the opinion of a majority will not actually be erroneous, yet it will verge upon error by straining a legal doctrine to its utmost. In such a situation, a considered and well-stated concurring opinion can be of value *by warning that the doctrine must not be pressed too far.* In other instances, a majority may announce a doctrine which is sound when applied to the facts before the court, but which would be wholly unsound if given a general application. Here again a timely concurring opinion may suffice *to check any extension of the doctrine,* and thereby better our jurisprudence. (Emphasis supplied mine).

Moorhead, Concurring and Dissenting Opinions, 38 Amer.B.Ass'n.J. 821, 823 (1952) (The 1952 Ross Prize Essay).

A judge, sitting on the Bench, in a black robe, traditionally enjoys a warm and uncritical trust of the jurors. Intervention, coupled with the jurors' trust, can upset the equilibrium of normal advocacy relationships in the courtroom. Intervention can provoke partiality, in the eyes of the jurors, for one litigant and against the other. It should be discouraged, not encouraged by appellate courts. Trial judges should not be a formidable arm for the prosecution; or for that matter, of the defense. Trial judges should not traverse the terrain of advocacy. *Accord: United States v. Ramos,* 291 F.Supp. 71 (R.I.1968), aff'd. 413 F.2d 743 (1st Cir.1969); *Nordmann v. National Hotel Company,* 425 F.2d 1103, 1109 (5th Cir.1970). If that happens, the plateau of respect vanishes and the judge becomes a wrangler in the arena.

SABERS, Justice (special concurrence).

I agree with the majority on all issues. As to Issue III, I am satisfied from the evidence that, at the point when the trial court intervened, the state had *not* "failed to prove its case" as indicated in the special concurrence. Instead, at the time of the trial court's intervention, there was evidence in the record to support the elements necessary for a conviction. I agree with the majority that the additional questions *clarified* the victim's use of certain slang terminology in describing the incidents of sexual contact, identification and venue. *See State v. Lien,* 305 N.W.2d 388 (S.D. 1981) in which this court stated that a trial court may question witnesses to "clarify evidence." *Id.* at 389–90. Here, there was testimony in the record that sexual contacts between the defendant and the victim occurred within Moody County, South Dakota.

The key point is that there was evidence in the record on these matters. The trial court did nothing more than " 'take reasonable measures to insure that the evidence [was] intelligibly presented to the jury.' ... The questions propounded and the answers elicited were little more than clarifications of the evidence being presented." *Lien* at 389–90 (citation omitted). Therefore, the trial court's intervention did *not* "establish the crucial elements which were [claimed to be] previously omitted."