2004 SD 2

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Damien GARBER, Defendant and Appellant.**

No. 22693.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided Jan. 7, 2004.

Lawrence E. Long, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Robert Tiefenthaler, Sioux City, Iowa, Attorney for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] After Damien Garber (Garber) pleaded guilty to Possession of a Controlled Substance in violation of SDCL 22–42–5, he was sentenced to ten years in the South Dakota State Penitentiary. On appeal, Garber raises the following issues: (1) whether the right to remain silent extends through sentencing; (2) whether his sentence was grossly disproportionate; (3) whether he should be re-sentenced by a different judge; and (4) whether his attorney's failure to advise him to remain silent during sentencing amounted to ineffective assistance of counsel. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On June 21, 2002, Union County Deputy Sheriff Eric Holmquist initiated the traffic stop of the vehicle in which Garber was a passenger because it had an unlit license plate and the vehicle appeared to be operated erratically. While speaking with the driver of the vehicle, Loni Vaselaar (Vaselaar), Deputy Holmquist noticed the smell of alcohol coming from the vehicle. Vaselaar admitted to drinking two beers. After asking Vaselaar to perform various field sobriety tests, Deputy Holmquist asked Vaselaar to stick out his tongue. Vaselaar complied and Deputy Holmquist observed a thick, white coating on his tongue, a sign that often indicated marijuana use in the deputy's experience. When questioned, Vaselaar admitted to smoking marijuana that afternoon but de-

nied the presence of any marijuana in the vehicle. Deputy Holmquist subsequently placed Vaselaar under arrest for ingestion of a controlled substance.

[¶ 3.] Shortly thereafter, Deputy Mike Palmer arrived at the scene to assist Deputy Holmquist. Deputy Palmer instructed Garber to get out of the back seat and asked him if he had been drinking. Garber replied that he had been drinking and that he did not have a driver's license. Garber also admitted he was drinking when the vehicle was pulled over and that there was an open beer can in the car. When asked, Garber denied the presence of any drugs in the vehicle and stated he had not smoked marijuana.

[¶ 4.] After placing Vaselaar under arrest, Deputy Holmquist spoke with the other passenger in the car, Jonna Erickson (Erickson). Deputy Holmquist noticed the red and glassy appearance of Erickson's eyes and smelled the odor of alcohol on her breath. When questioned, Erickson denied having anything to drink or using any type of drug. Deputy Holmquist then placed Erickson in Deputy Palmer's patrol car.

[¶ 5.] A subsequent search of the vehicle revealed a half-full can of beer where Garber had been sitting and a partially consumed can of beer where Erickson had been sitting. Both passengers were promptly issued citations for having an open container in a motor vehicle. Erickson, who was nineteen at the time, also received a citation for underage consumption. Because Vaselaar's vehicle was to be towed, Deputy Palmer gave Garber and Erickson a ride back to North Sioux City, South Dakota.

[¶ 6.] After Deputy Palmer, Garber, and Erickson departed, Deputy Holmquist began an inventory search of the vehicle. Upon opening the car's trunk, Deputy Holmquist immediately noticed the odor of marijuana and identified the smell as coming from a bag filled with clothes. Deputy Holmquist found a large plastic bag under the clothing. The bag, later identified as belonging to Garber, contained large quantities of marijuana and methamphetamine. A subsequent analysis determined that the bag contained one pound of marijuana and approximately 110 grams of methamphetamine. Deputy Holmquist also discovered an electronic scale in the trunk.

[¶ 7.] Deputy Holmquist immediately radioed Deputy Palmer and directed him to place Garber and Erickson under arrest. After returning to Vaselaar's vehicle, the deputies placed Garber in the back seat of Deputy Holmquist's car with Vaselaar, and placed Erickson in Deputy Palmer's vehicle. Alone in the patrol car, Garber and Vaselaar began to speak with one another. Unbeknownst to them, a microphone in Deputy Holmquist's car recorded the conversation, including Garber's remark that "I didn't think they were ever going to find that," and his observation that "You know, you can only do this so long before something happens."

[¶ 8.] Garber, Vaselaar, and Erickson were all placed under arrest. A sample of Garber's urine tested positive for methamphetamine. Garber was charged with two counts of Possession of a Controlled Substance in violation of SDCL 22–42–5, Possession of Marijuana contrary to SDCL 22–42–6, Ingestion pursuant to SDCL 22–42–15, Possession of Drug Paraphernalia in violation of SDCL 22–42A–3, and Open Container in a Motor Vehicle contrary to SDCL 35–1–91.

[¶ 9.] On August 26, 2002, Garber appeared before Judge McMurchie and pleaded guilty to one count of Possession of a Controlled Substance, methamphetamine.

[¶ 10.] On December 17, 2002, Garber was brought before Judge Eng for sentencing.[1] Judge Eng told Garber he had the right to request sentencing from Judge McMurchie, but Garber indicated he wished to go forward with sentencing at that time. Judge Eng subsequently entered a judgment sentencing Garber to ten years in the South Dakota State Penitentiary.

[¶ 11.] Garber's motion to vacate sentence and motion to transfer were denied. Garber now appeals and raises the following issues:

1. Where a Defendant has entered a plea of guilty, does that Defendant's privilege against self-incrimination continue through the sentencing hearing.

2. Whether Garber's sentence to ten years in the penitentiary for possession of a controlled substance was grossly disproportionate.

3. Whether Garber should be re-sentenced by a different trial judge.

4. Whether counsel's failure to advise Garber to exercise his right to remain silent during sentencing amounted to ineffective assistance of counsel.

Affirmed.

## STANDARD OF REVIEW

[¶ 12.] We review Garber's argument that the right to remain silent, pursuant to Fifth Amendment of the Constitution and Article VI, § 9 of the South Dakota constitution, extends to sentencing under the de novo standard of review.

[¶ 13.] We give "great deference to sentencing decisions made by trial courts." *State v. Milk*, 2000 SD 28, ¶ 10,

607 N.W.2d 14, 17 (citing *State v. Gehrke*, 491 N.W.2d 421, 422 (S.D.1992) (citation omitted)). As we reiterated in *Milk*:

> Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Id.* (quoting *Gehrke*, 491 N.W.2d at 423). Given this level of deference, we generally uphold sentences within the statutory maximum. *State v. Stahl*, 2000 SD 154, ¶ 5, 619 N.W.2d 870, 871–72 (citation omitted). Accordingly, appeals attacking the proportionality of a sentence will rarely be successful. *State v. Bonner*, 1998 SD 30, ¶ 14, 577 N.W.2d 575, 579 (citation omitted).

## ANALYSIS AND DECISION

[¶ 14.] **1. Where a Defendant has entered a plea of guilty, does that Defendant's privilege against self-incrimination continue through the sentencing hearing.**

[¶ 15.] Garber pleaded guilty to one count of Possession of Controlled Substance before Judge McMurchie and was sentenced by Judge Eng to ten years in the South Dakota State Penitentiary, the maximum penalty for violation of SDCL 22–42–5. Garber contends, however, that Judge Eng violated his Fifth Amendment

---

1. Between Garber's guilty plea and sentencing hearing, Judge McMurchie was reassigned to a different part of the circuit. Consequently, Judge Eng obtained Garber's case on his docket.

right to remain silent during the sentencing hearing, and, therefore, his sentence should be overturned. We have not squarely addressed whether a defendant's right to remain silent extends to the sentencing phase where that defendant has entered a plea of guilty.

[¶ 16.] Garber believes Judge Eng violated his Fifth Amendment right to remain silent when Judge Eng questioned him about the incident that led to his arrest. The relevant portions of the exchange follow:

THE COURT: Thank you. Mr. Garber, if you'd please stand. Do you have any comments you'd like to make?

GARBER: Yes, I would like to apologize to the State of South Dakota for having possession of methamphetamine in my body. I know that was wrong. I'd like to apologize to society in general for any wrongdoing that, you know, I did or any harm that I did to any other person by having methamphetamine in my body. I know it was wrong. I feel I'm on the right path and I really want to change my life around. I think I can do that. I have the ability to do that without having to go away for however long you sentence me. I really want a chance to work this out through probation. That's all.

. . . . . .

THE COURT: Mr. Garber, what happened that day?

GARBER: Basically what happened is Mr. Vaselaar came over to my house. I thought we were going to go fishing. He had some meth, which we smoked. . . . I knew he had maybe a little in his pocket, and then we got pulled over on the way up to Sioux Falls. . . .

[¶ 17.] At this point, Judge Eng read from the police report, including Garber's comments "I didn't think they were ever going to find that" and "You know, you can only do this for so long before something happens." Garber, however, continued to deny his knowledge of the drugs found in the vehicle's trunk:

THE COURT: How about the bag? Do you know anything about the bag?

GARBER: Yes, I had a Caffeine bag. . . .

THE COURT: What's—that's a brand name?

GARBER: The brand is Caffeine.

THE COURT: And there were clothes in that?

GARBER: Yes, those were my clothes.

THE COURT: And underneath the clothes was a plastic bag?

GARBER: I have no knowledge of that. I didn't put any drugs in that. If there were any drugs, it was put there without my knowledge.

. . . . . .

THE COURT: So the bag was yours, but you know nothing about that?

GARBER: No.

THE COURT: And did you put the bag in the trunk?

GARBER: Yes, I did. . . . But when I left the house with the bag, there were no drugs in the bag.

THE COURT: That's the story you want to leave with this court before I sentence you?

GARBER: Yes, that is the true and correct story.

THE COURT: Okay. Mr. Gardner, it's the duty of this court to do many things, one of them sentencing. You know, it's not an easy job. This court has said on more than one occasion it believes in rehabilitation. It believes people can change. . . . I hope you see the point that until a person comes forward and admits something, he cannot be purged

of that. Now, one final time, is that the story you wish to leave with this court? GARBER: Yes, I admit to the possession of methamphetamine in my body, sir.

THE COURT: All right. This court believes and has always that people deserve an opportunity. This court believes that our system is set up so that we have many different things and broad discretion with sentencing up to and including the maximum allowed by law. Mr. Garber, this court does not believe you. And as a consequence, this court is sentencing you to ten years in the South Dakota State Penitentiary.

[¶ 18.] Garber contends Judge Eng's question "what happened that day?" and all further inquiries after he exercised his right of allocution, pursuant to SDCL 23A–27–1,[2] violated his Fifth Amendment right to remain silent during sentencing. In support of his proposition, Garber cites *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), a case involving a woman's guilty plea for conspiracy to distribute cocaine. At sentencing, the federal district court ruled the defendant did not have the right to remain silent and that it could draw adverse inferences from her silence. *Id.* at 318–19, 119 S.Ct. at 1310–11. The Court of Appeals for the Third Circuit affirmed the sentence. *Id.*

[¶ 19.] On appeal, the Supreme Court reversed and specifically rejected the argument that a defendant's guilty plea waives the right to remain silent at sentencing. *Id.* at 325, 119 S.Ct. at 1313. *See also Estelle v. Smith*, 451 U.S. 454,

463, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) ("Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment."). In addition, the Supreme Court held that a sentencing court could not draw adverse inferences from a defendant's exercise of the right to remain silent at sentencing. *Mitchell,* 526 U.S. at 329–30, 119 S.Ct. at 1315–16.

[¶ 20.] In the opinion, the Supreme Court once again reiterated its belief that incrimination does not end "once guilt has been adjudicated." *Id.* at 325, 119 S.Ct. at 1313; *see Estelle,* 451 U.S. at 462, 101 S.Ct. at 1872. The Court explained its holding by reasoning:

> As to common sense, it appears that in this case, as is often true in the criminal justice system, the defendant was less concerned with the proof of her guilt or innocence than with the severity of her punishment. Petitioner faced imprisonment from one year upwards to life, depending on the circumstances of the crime. To say that she had no right to remain silent but instead could be compelled to cooperate in the deprivation of her liberty would ignore the Fifth Amendment privilege at the precise stage where, from her point of view, it was most important.

*Mitchell,* 526 U.S. at 327, 119 S.Ct. at 1314. *See United States v. Preciado,* 336 F.3d 739, 746 (8th Cir.2003) (affirming a district court's decision to allow defendants to remain silent at sentencing because "[a] defendant's role in the offense is always relevant at sentencing.").

---

**2.** SDCL 23A–27–1 provides, in pertinent part: Before imposing a sentence, a court may order a hearing in mitigation or aggravation of punishment. At such hearing, the court shall allow the defense counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.

[¶ 21.] Consistent with other jurisprudence concerning the right to remain silent, however, the *Mitchell* Court held this right can be waived and, once waiver occurs, the right cannot be automatically reinvoked:

, It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. *See Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951). The privilege is waived for the matters to which the witness testifies, and the scope of the 'wavier is determined by the scope of relevant cross-examination.' *Brown v. United States,* 356 U.S. 148, 154–55, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

*Mitchell,* 526 U.S. at 321, 119 S.Ct. at 1311–12, 143 L.Ed.2d at 433. Waiver also allows questioning of the defendant to preclude "an invitation to mutilate the truth a party offers to tell." *Id.* at 322, 119 S.Ct. 1307.

[¶ 22.] Although *Mitchell* involved a guilty plea in federal court, a number of states courts have adopted its reasoning. *See State v. Worthington,* 8 S.W.3d 83, 92 (Mo.1999); *State v. Shreves,* 60 P.3d 991, 996, 313 Mont. 252, 260 (2002); *Com. v. Freeman,* 827 A.2d 385, 410, 573 Pa. 532 (2003); *Com. v. Mills,* 764 N.E.2d 854, 866, 436 Mass. 387, 401 (2002); *Martin v. Flanagan,* 789 A.2d 979, 985, 259 Conn. 487, 497 (2002); *State . v. Merchant,* 790 A.2d 386, 393, 173 Vt. 249, 258 (2001). We agree with the underlying rational of *Mitchell* and hold that a defendant's Fifth Amendment right to remain silent at sentencing is not waived by entering a guilty plea in South Dakota state court. We also recognize that it would be error to draw adverse inferences from a defendant's exercise of that right at sentencing.

[¶ 23.] In this case, however, Garber waived his right to remain silent both legally and factually. We have long recognized that "[t]his privilege of silence is for the benefit of the witness and is deemed waived unless invoked." *State v. Dilworth,* 83 S.D. 363, 366, 159 N.W.2d 795, 796 (1968). As the United States Supreme Court acknowledged in *United States v. Monia:*

The Fifth Amendment declares that 'No person ... shall be compelled in any criminal Case to be a witness against himself.' [T]he amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment.

317 U.S. 424, 427, 63 S.Ct. 409, 410–11, 87 L.Ed. 376 (1943); *see Minnesota v. Murphy,* 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409 (1984).

[¶ 24.] The record clearly indicates that neither Garber nor his attorney affirmatively asserted the right to remain silent at the sentencing hearing. Nor did Garber or his attorney object to any of Judge Eng's questions during the hearing. When offered the chance to do so by the trial court, Garber voluntarily took the opportunity to speak on his own behalf. He told a version of the facts including his lack of knowledge of the drugs in his own clothes bag, which justified the trial court in essence finding he "mutilated the truth." There is no constitutional right to lie. This is especially appropriate concerning a subject which the defendant has voluntarily brought up to the court. It was Garber's lack of candor which prejudiced him, not the exercise of his opportunity to speak on his own behalf. As such, under

*Mitchell*, Garber has no grounds for a valid complaint concerning his proceedings.

[¶ 25.] Normally, this Court declines to review issues not presented to a trial court, and "[e]ven fundamental rights can be waived." *State v. Henjum*, 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763 (citation omitted). Therefore, we hold Garber waived his Fifth Amendment right to remain silent during sentencing when he failed to assert that right, voluntarily testified to a subject and then failed to object to Judge Eng's questions. We also decline to extend plain error analysis to Garber's case.

[¶ 26.] **2. Whether Garber's sentence to ten years in the penitentiary for possession of a controlled substance was grossly disproportionate.**

[¶ 27.] Garber next argues his sentence to ten years in the South Dakota State Penitentiary for Possession of a Controlled Substance was grossly disproportionate and should be reversed as cruel and unusual punishment in violation of the Eighth Amendment. In support of his argument, Garber points out that his co-defendants, Vaselaar and Erickson, received more lenient sentences. Judge Eng sentenced Vaselaar to ten years probation and ninety days in jail, while he allowed Erickson, who was pregnant at the time, to remain free on bond and continued her sentencing until after the birth of her child.

[¶ 28.] It is well-settled that we employ very limited principles in our constitutional review of sentences. *Milk*, 2000 SD 28, ¶ 14, 607 N.W.2d at 18. These principles include giving "substantial deference to the legislature's broad authority to determine the types and limits of punishment" and the notion that "the Eighth Amendment does not mandate adoption of any one penological theory." *Id.* (citing *State v. Hinger*, 1999 SD 91, ¶ 16, 600 N.W.2d 542, 547 (citations omitted)). Giv-

en these principles, we rarely disturb sentences within the statutory maximum. *Stahl*, 2000 SD 154, ¶ 5, 619 N.W.2d at 872.

[¶ 29.] In *Bonner*, we outlined the test we will employ in reviewing the proportionality of a given sentence:

[T]o assess a challenge to proportionality we first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends. If, on the other hand, the sentence appears grossly disproportionate, we may, in addition to examining the other *Solem* factors, conduct an intra- and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.

1998 SD 30, ¶ 17, 577 N.W.2d at 580 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1000, 111 S.Ct. 2680, 2704, 115 L.Ed.2d 836, 868 (1991)).

[¶ 30.] Garber pleaded *guilty* and was sentenced to ten years in the South Dakota State Penitentiary for violating SDCL 22–42–5. Ten years imprisonment is the maximum penalty allowed under SDCL 22–42–5. As we recognized in *Milk*, a sentencing court "should acquire a thorough acquaintance with the character and history of the man before it." 2000 SD 28, ¶ 16, 607 N.W.2d at 19. Judge Eng based his sentencing decision on the pre-sentence report, police reports, and Garber's comments during the sentencing hearing.

[¶ 31.] Here, we recognize that Garber has no prior felony convictions. The record indicates, however, that Garber's con-

nection to the drug underworld was extensive. Garber admitted to a long history of drug abuse, including methamphetamine, cocaine, marijuana, ecstasy, and LSD. The fact that Garber's bag contained a large quantity of drugs, one pound of marijuana and 110 grams of methamphetamine, was also relevant. In addition, Garber's own statement made while in the back of a patrol car that "you can only do this so long before something happens" suggests that he had a major involvement with illegal drugs.

[¶ 32.] In his brief, Garber does not dispute the level of his drug use or involvement in drug related activities. Rather, Garber's sole basis to challenge the proportionality of his sentence is based on the fact that Vaselaar and Erickson received much less severe sentences. For support, Garber cites *Bonner* for the proposition that "[r]arely will disparity be so immediate, when accomplices sentenced for the same offense receive diametrically opposite punishments." 1998 SD 30, ¶ 18, 577 N.W.2d at 580. Garber, however, has failed to show that his and Vaselaar and Erickson's "past records, demeanor, degree of criminal involvement, etc., are sufficiently similar as to cause the sentence disparity between them to be unjust." *Id.*, ¶ 20. Without this showing, "we must defer to the trial judge's discretion." *Id.*

[¶ 33.] Furthermore, we believe the fact that Judge Eng sentenced all three defendants, Garber, Vaselaar, and Erickson, is important. As the sentencing judge, Judge Eng had the opportunity to personally evaluate the relative character, demeanor, and truthfulness of each defendant. In addition, Judge Eng was able to gauge the relative culpability of each defendant. Although each defendant pleaded guilty to the same offense, we have never held that the level of culpability for an offense is always the same for each

defendant. Since the drugs were found in his bag, there was an evidentiary basis to conclude Garber was the ringleader. The amount of illegal drugs was large and, when found with a scale, indicates that Garber was a drug dealer in addition to being a drug user. Finally there is his lack of truthfulness. It is entirely permissible for a sentencing judge to consider the truthfulness of a defendant, and here Judge Eng simply did not believe Garber's version of the events leading to his arrest. *State v. Murphy,* 506 N.W.2d 130, 133 (S.D.1993).

[¶ 34.] Garber's sentence was within the maximum allowed by the state legislature. Judge Eng, after having the opportunity to personally evaluate Garber's character and history, chose to give Garber the maximum sentence for his crime. After a review of the record and Garber's arguments, he has not established that his sentence is grossly disproportionate. We therefore affirm his sentence.

[¶ 35.] **3. Whether Garber should be re-sentenced by a different trial judge.**

[¶ 36.] Because of our holding under Issues 1 and 2, it is not necessary to address this issue.

[¶ 37.] **4. Whether counsel's failure to advise Garber to exercise his right to remain silent during sentencing amounted to ineffective assistance of counsel.**

[¶ 38.] This Court has "consistently held that claims of ineffective assistance of counsel generally will not be considered on direct appeal." *State v. Hoeft,* 1999 SD 24, ¶ 25, 594 N.W.2d 323, 328 (citing *State v. McGill,* 536 N.W.2d 89, 94 (S.D.1995); *State v. Petersen* 515 N.W.2d 687, 688 (S.D.1994); *State v. Sonen,* 492 N.W.2d 303, 304 (S.D.1992); *State v. Wurtz,* 436 N.W.2d 839, 842 (S.D.1989)). We there-

fore decline to address this particular claim at this time.

[¶ 39.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.