1996 SD 53

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Ernest C. TWO BULLS, Defendant and Appellant.**

**No. 19231.**

Supreme Court of South Dakota.

Considered on Briefs March 11, 1996.

Decided May 8, 1996.

Mark Barnett, Attorney General, Tony L. Portra, Assistant Attorney General, Pierre, for plaintiff and appellee.

Bruce H. Ellison, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Ernest Two Bulls was convicted of vehicular homicide, vehicular battery, and driving a vehicle while having .10% or more of alcohol in his blood (third offense). He

appeals his vehicular homicide and vehicular battery convictions, claiming that the trial court erroneously instructed the jury on proximate cause and that the evidence was insufficient to sustain these convictions. We affirm.

## FACTS

[¶ 2] At approximately 11:00 a.m. on February 24, 1994, Two Bulls was driving a yellow Subaru automobile south from Rapid City on Highway 79. His fiancée, Theresa Good Voice Flute, was seated in the front passenger seat. Her brother, Duane Good Voice Flute, sat in the back seat.

[¶ 3] Andrew Goeden was driving a sand-hauler truck out of the Pennington County Highway Department lot toward the entrance to Highway 79. The truck carried a full load of sand. He intended to cross the two southbound lanes of Highway 79 and turn left into the northbound lanes. As Goeden's truck proceeded to cross the southbound lanes, Two Bulls' automobile collided with it. Theresa died in the crash and Duane sustained serious injuries.

[¶ 4] Chemical analysis revealed Two Bulls had a blood-alcohol level of between .229% and .247%. The State charged him with alternative counts of driving under the influence of alcohol (third offense) and driving while having .10 percent or more of alcohol in the blood (third offense). The State also charged him with vehicular homicide for the death of Theresa and vehicular battery for the injuries sustained by Duane.

[¶ 5] At trial, Two Bulls defended against the vehicular homicide and battery charges by claiming that he was not negligent in operating his vehicle and that negligence by the driver of the truck was the cause of the collision.

## DECISION

### ISSUE 1.

[¶ 6]   Was it error to instruct the jury that Two Bulls' negligence in driving the motor vehicle need only be "a" proximate cause of death or serious bodily injury in order to find him guilty of vehicular homicide or vehicular battery?

[¶ 7] Two Bulls was charged with a violation of SDCL 22–16–41 and –42. Under those statutes, if there is a finding of negligent operation of a motor vehicle by a person under the influence, such negligence must be shown to have "thereby cause[d]" the death or injuries.

[¶ 8] South Dakota's Pattern Jury Instructions 3–23–8 and 3–24–29 for vehicular homicide and vehicular battery provide that an essential element of those crimes, to be proven beyond a reasonable doubt, is that negligent operation or driving by a person under the influence of alcohol be "the" proximate cause of the death or battery.

[¶ 9] The trial court *sua sponte*, and over the timely objection of Two Bulls' counsel, modified the pattern instructions and substituted the word "a" for "the" therein. The trial judge rationalized that the change would make it "a bit more clear" because "it just doesn't make sense to me that it would be—that there couldn't be more than one proximate cause sufficient to justify the action."

[¶ 10] However, the trial court did instruct the jury concerning the definition of proximate cause in the context of both vehicular homicide and vehicular battery. Two Bulls did not object to these instructions. As to the vehicular homicide charge, the instruction read in pertinent part:

> By "proximate cause of the death" is meant that cause which, in the natural and continuous sequence, or chain of events, unbroken by any intervening cause, aids in producing the death, and without which it would not have occurred. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the death.

The trial court gave an identical instruction concerning vehicular battery, except with reference to serious bodily injury rather than death. These instructions gave proper guidance to the jury in determining whether Two Bulls' negligence was a legal cause of the injuries. We have previously endorsed the use of nearly identical instructions when

there is evidence of concurring or contributing causes. *Driscoll v. Great Plains Marketing Co.,* 322 N.W.2d 478, 479 (S.D.1982) (citing South Dakota Pattern Jury Instructions, Vol. I, § 15.01); *Leslie v. City of Bonesteel,* 303 N.W.2d 117, 120 (S.D.1981).*

[¶ 11] Jury instructions are adequate when, considered as a whole, they correctly state the law and properly inform the jury. *State v. Schmiedt,* 525 N.W.2d 253, 255 (S.D.1994); *State v. Knoche,* 515 N.W.2d 834, 838 (S.D.1994). To prevail, Two Bulls must not only show that the instructions were improper; he must also demonstrate that the jury probably would have returned a different verdict if the instructions had been given in the manner he proposed. *Knoche,* 515 N.W.2d at 838 (citing *State v. Stapleton,* 387 N.W.2d 28 (S.D.1986)). We conclude Two Bulls has not met this burden.

[¶ 12] Under South Dakota law, negligent operation of a motor vehicle is an essential element of both vehicular homicide and vehicular battery. The statutes do not require a showing of recklessness or gross negligence. SDCL 22–16–41, –42. Because a finding of ordinary negligence is sufficient to establish vehicular homicide or battery, the appropriate standard of causation is that employed in tort law. *Commonwealth v. Berggren,* 398 Mass. 338, 496 N.E.2d 660, 661–62 (1986).

[¶ 13] Tort law has long recognized that the negligence of two or more individuals may combine to cause injuries to another and that each may be held legally responsible for the resulting injuries. W. Page Keeton et al., Prosser and Keeton on Torts § 52, at 347–349 (5th Ed 1984); *Degen v. Bayman,* 86 S.D. 598, 602–03, 200 N.W.2d 134, 136 (S.D. 1972); SDCL 15–8–11 and –15. South Dakota Criminal Pattern Jury Instructions 3–23–8 and 3–24–29 proffered by Two Bulls, referring to "the" proximate cause, do not take account of this joint liability. The negligence of another does not prevent conviction for vehicular battery or homicide, so long as the defendant's negligence is also a proximate cause of the victim's injuries or death. *See State v. Theuring,* 46 Ohio App.3d 152, 546 N.E.2d 436, 438 (1988) (noting there can be more than one proximate cause of an injury and rejecting vehicular homicide, defendant's proffered instruction concerning "the" proximate cause of the death), *appeal dismissed without published opinion,* 38 Ohio St.3d 709, 533 N.E.2d 359 (1988); *State v. William,* 231 Neb. 84, 435 N.W.2d 174, 178 (1989) (quoting *State v. Rotella,* 196 Neb. 741, 246 N.W.2d 74, 76 (1976) ("In criminal cases prosecuted under the motor vehicle homicide act, the negligence or unlawful acts of another driver which proximately contributed to the death, as distinguished from an independent intervening cause thereof, [are] not a defense if the evidence is sufficient to sustain a conclusion beyond a reasonable doubt that the defendant's negligence or unlawful acts were also a proximate cause of the death of another."); *State v. Radziwil,* 235 N.J.Super. 557, 563 A.2d 856, 863 (App.Div.1989) (noting the careless driving of another driver that contributes to an accident does not necessarily absolve the defendant of criminal responsibility for the victim's injuries), *aff'd,* 121 N.J. 527, 582 A.2d 1003 (1990).

[¶ 14] The instructions given by the trial court correctly stated the law and informed the jury. We find no error.

### ISSUE 2.

[¶ 15] **Was the evidence sufficient to sustain a conviction for vehicular homicide and vehicular battery?**

[¶ 16] To sustain a conviction for vehicular homicide or vehicular battery, the State must prove that the defendant operated his vehicle in a negligent manner and that

---

* The pattern jury instruction cited in *Driscoll* and *Leslie* is virtually identical to the instruction as it was given to the jury in this case. The *Driscoll* and *Leslie* instruction read:

When the expression "proximate cause" is used, it means that cause which is an immediate cause and which, in natural or probable sequence, produced the injury complained of. It is a cause without which the injury would not have been sustained. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.
*Driscoll,* 322 N.W.2d at 479 (citing South Dakota Pattern Jury Instructions, Vol. I, § 15.01); *Leslie,* 303 N.W.2d at 120.

his negligence caused the death or serious bodily injury of another person. SDCL 22–16–41, –42. Two Bulls argues the evidence was insufficient to establish that: (1) he was negligent in the operation of his vehicle; or (2) any negligence on his part was a proximate cause of his passengers' injuries.

[¶ 17] Our standard of review is well settled:

In determining the sufficiency of the evidence on review, the question presented is *whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt. State v. Lewandowski*, 463 N.W.2d 341, 343–44 (S.D. 1990). In this review, we must accept that evidence, and the most favorable inferences to be fairly drawn therefrom, which will support the verdict. *Id.* at 344 (citations omitted). In determining the sufficiency of the evidence, *this Court will not " 'resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.' " State v. Hanson*, 456 N.W.2d 135, 139 (S.D.1990) (quoting *State v. Faehnrich*, 359 N.W.2d 895, 900 (S.D. 1984)). *No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt. State v. Bartlett*, 411 N.W.2d 411, 412 (S.D.1987).

*State v. Wall*, 481 N.W.2d 259, 262 (S.D.1992) (emphasis added).

[¶ 18] The State presented witnesses who testified about the visibility and road conditions near the time of the accident. Fred Eisenbraun, a detective with the Rapid City Police Department, arrived at the crash site within minutes of the accident. He testified the weather was cold and windy, visibility ranged from ten to fifty feet, and the roads were slippery. Although the posted speed limit on Highway 79 permitted travel at forty-five miles per hour, he drove to the crash site at a speed of less than twenty miles per hour.

[¶ 19] Michael Turner was driving on Highway 79 at 11:00 a.m. on the day of the crash. He was driving a pickup and pulling a trailer loaded with steel. He stated the weather conditions were "some of the worst conditions I'd seen in a long time, maybe the worst I'd ever seen." He testified the roads were slippery and visibility ranged as low as sixty feet. Turner estimated his speed at thirty-five miles per hour. A yellow vehicle passed him, which he described as moving "fast." He opined that the vehicle was not traveling at a safe speed, given the weather and road conditions. Turner lost sight of the vehicle when it reached about sixty yards ahead of him. Twenty to thirty seconds later, Turner again saw the vehicle, hooked to the front of the sand truck. Turner stopped his truck and attempted to assist in obtaining help.

[¶ 20] A firefighter described visibility as "poor." He proceeded to the crash site at forty miles per hour. A paramedic testified that the visibility was forty to fifty feet and that he drove to the accident site at five to ten miles over the forty-five mile per hour speed limit. A police officer described visibility as ranging from the front of his car to forty or fifty feet ahead of his vehicle. He drove to the site at thirty to forty miles per hour in the left lane with his siren blaring and emergency lights flashing. Other witnesses who arrived at the crash site within approximately forty-five minutes of the accident indicated that visibility was approximately three-to four-hundred yards.

[¶ 21] Dr. Robert Looyenga, a professor of chemistry, testified that blood samples taken from Two Bulls shortly after the accident revealed a blood-alcohol content of .229% to .247%. He testified that alcohol impairs judgment, but could not quantify how alcohol affects response time.

[¶ 22] Andrew Goeden, the driver of the sand truck, testified that his fully loaded vehicle weighed approximately fifty-thousand pounds. He agreed that when he crossed the highway he was "like a brick wall that was encased in steel." He was leaving the highway department parking lot to deliver a load of sand for use on the roads during the bad weather. He intended to cross the southbound traffic and turn into the northbound lanes of Highway 79. He expected he could cross the southbound lanes in three to

four seconds at five to ten miles per hour. His truck was twenty feet long. He had no emergency lights, only headlights. He testified that because he was broadside to whoever was heading south on the highway they would not have seen his headlights. He estimated visibility ranged from zero to one hundred feet. He described weather conditions and his wait to cross the highway as follows:

Ah, very bad. Ah, when I pulled up to the stop sign, you know, I sat there for quite some time. I'm really not sure how long I sat there, but you know, every time I'd get ready to pull out, I'd see some cars coming through the haze that—you know, I just—it seemed like it kept on changing. One minute you couldn't see anything. The next minute you might be able to see a hundred feet. But the way the wind and snow was blowing around, it was just, you know, very hard to see.

[¶ 23] As he pulled onto the highway, Goeden looked straight ahead. He saw something yellow out of the corner of his eye and applied the brakes. Then Two Bulls' Subaru hit the front left corner of his truck. Goeden estimated he had been moving for one to two seconds when the collision occurred and was traveling at one to two miles per hour. He stated the truck was hit when he was about halfway through the outside lane and that his vehicle stopped when it was completely blocking the lane.

[¶ 24] Doreen Ragnone, an accident investigator with the Rapid City Police Department, testified regarding the cause of the crash. She had taken two training courses in accident investigation, an accident reconstruction course, and a motorcycle reconstruction course. She estimated she had performed two accident reconstructions every year for the last five years.

[¶ 25] Ragnone testified that the visibility was very poor, ranging from zero to ten feet. She estimated she did not drive over twenty-five miles per hour, if that, when motoring to the accident scene. She drove with her emergency lights and siren on.

[¶ 26] Ragnone estimated Two Bulls was driving between thirty to fifty miles per hour. She stated the average perception time of an unimpaired driver is 1.6 seconds;

that is, it takes 1.6 seconds for an individual to perceive a hazard. She stated an individual who has been drinking alcohol will likely take longer to perceive a hazard, although she could not quantify the delay. She opined that a car traveling thirty-three miles per hour would travel 77.40 feet in 1.6 seconds. Ragnone then testified that on a clean, dry highway the average stopping distance for a vehicle traveling thirty-three miles per hour is 53.38 feet. She concluded it would take the average, unimpaired driver approximately one-hundred-thirty feet to stop after perceiving and reacting to the sight of the sand truck, if they were traveling at thirty-three miles per hour. Ragnone stated this calculation was not based on an assessment of the highway at the time of the crash when snow was falling onto the surface. She stated the stopping distance would presumably increase in that circumstance.

[¶ 27] Ragnone opined that the sand truck was found in the same location that it was in at the time of the collision. She testified that the truck did not move in the wake of the collision. The truck extended fully across the outside lane of the highway. She stated that Two Bulls was traveling in the inside left lane when his car collided with the truck. Ragnone testified that the truck had probably been crossing the lane for about four seconds prior to impact and the average, unimpaired driver would have 1.6 seconds to perceive and 2.4 seconds to react to the truck in the road. She asserted that Goeden was not negligent in operating the sand truck. She noted the general rule that the lower the speed of the vehicles the less severe the crash. She opined that if Two Bulls had been driving at twenty-five miles per hour the injuries to the passengers would have been less severe.

[¶ 28] Thomas Alcorn, a civil engineer with a masters degree in traffic safety and accident reconstruction, testified for the defense. He stated the vehicles collided when the truck was six to seven feet within the outer lane and the Subaru was moving down the center of the outer lane. The truck moved an additional six or more feet into the lane after the impact. Alcorn opined this was a "two-second accident." From the time the

truck driver started to cross the highway to the time of the collision two seconds passed. He stated the truck driver could not safely operate his truck with visibility of only one-hundred feet. He concluded the truck driver's failure to discontinue the operation of his vehicle until it could be safely operated was the primary cause of the accident. He testified the accident was unavoidable and in no way the fault of Two Bulls.

[¶ 29] We cannot and will not sit as a second jury in this case. We are constrained by the applicable standard of review. So long as the evidence and rational inferences drawn from the evidence support a reasonable theory of guilt, the conviction must be affirmed. There is evidence in the record to support the jury's guilty verdict. Testimony by Doreen Ragnone, Michael Turner, and other individuals who responded to the accident, indicated that Two Bulls' driving speed at the time of the crash was unreasonable given the weather conditions and, therefore, negligent. Additionally, Ragnone opined that the injuries resulting from the crash would have been less severe if Two Bulls had not been proceeding at such speeds. Based on this evidence, the jury could reasonably conclude that Two Bulls' negligent driving was a proximate cause of Duane's injuries and Theresa's death.

[¶ 30] Affirmed.

[¶ 31] SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

[¶ 32] KONENKAMP, J., deeming himself disqualified did not participate in this opinion.