2003 SD 150

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Scott MOLLMAN, Defendant and Appellant.**

No. 22697.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided Dec. 23, 2003.

---

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, SD, for plaintiff and appellee.

Jeremiah J. Davis, Pennington County Public Defender's Office, Rapid City, SD, for defendant and appellant.

SABERS, Justice.

[¶ 1.] Scott Mollman appeals his conviction for vehicular homicide after a jury trial. Mollman was sentenced to fifteen years in the state penitentiary. He appeals his conviction asserting the trial court abused its discretion in 1) excluding evidence that the decedent did not have a motorcycle operator's endorsement; 2) allowing the State to show the jury a picture of the decedent and his wife; and 3) denying Defendant's motion for mistrial. He also appeals his sentence, arguing 4) the sentence was grossly disproportionate and violated the Eighth Amendment prohibition against cruel and unusual punishment. We affirm the conviction and sentence.

## FACTS

[¶ 2.] On May 28, 2002, Mollman and Gary Severson were involved in a collision near the intersection of West Main and Whitewood Streets in Rapid City. Severson was riding a motorcycle, Mollman was driving a car. At the time of collision, Mollman was making a left turn and Severson was approaching on the inside lane from the opposite direction. Severson had the right-of-way. When they collided, Severson was thrown from his motorcycle. Severson suffered massive head injuries and never recovered consciousness before his death two days later.

[¶ 3.] Officer Amanda Dubridge of the Rapid City Police Department was the first officer to arrive on the scene. After seeing that Severson was being cared for, Dubridge began questioning witnesses. She quickly discovered that Mollman was the other driver. She testified that when she approached him she noted a "moderate" odor of alcohol and that Mollman failed all of the field sobriety tests she administered. The chemist who tested Mollman's blood samples estimated that his blood alcohol level at the time of the accident was between .128 and .13. Mollman was originally charged with vehicular battery, driving or control of a vehicle while under the influence of alcohol or alternatively, driving or control of a vehicle while having .10 percent or more of alcohol in his blood. When Severson passed away, the complaint was amended to change the first count from vehicular battery to vehicular homicide under SDCL 22–16–41. A jury found Mollman guilty of vehicular homicide. The trial court sentenced Mollman to fifteen years in the state penitentiary. Mollman appeals his conviction and sentence raising four issues:

1. Whether the trial court abused its discretion by granting the State's motion to preclude evidence that the decedent did not have a motorcycle endorsement.

2. Whether the trial court abused its discretion by permitting the State to show the jury a photo of the decedent and his wife.

3. Whether the trial court abused its discretion by denying Defendant's motion for a mistrial.

4. Whether Mollman's sentence violates the Eighth Amendment prohibition against cruel and unusual punishment.

We affirm.

**[¶ 4.] 1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE STATE'S MOTION TO PRECLUDE EVIDENCE THAT THE DECEDENT DID NOT HAVE A MOTORCYCLE ENDORSEMENT.**

[¶ 5.] The State filed a motion in limine requesting that Mollman be prohibited from referring to the fact that the decedent did not have a valid motorcycle endorsement on his driver's license at the time of the accident.* The trial court granted that motion after the defense made an offer of proof on the issue.

[¶ 6.] In its offer of proof, the defense argued that the lack of endorsement was evidence that the decedent was not a competent motorcycle rider. The defense planned to offer this evidence as part of a larger trial tactic of showing that the decedent was an inexperienced and incompetent rider. The Defendant intended to introduce this evidence coupled with testimony that the decedent *may have* been driving very slowly, that he *may have* been wearing sunglasses for eye protection, that the motorcycle had low mileage and that he *may have* "darted" into traffic from a casino parking lot.

[¶ 7.] Mollman argues on appeal that granting the State's motion in limine denied him a fair trial because it "invaded the province of the jury by virtually finding, as a matter of law, that the State had satisfied the element of proximate cause." The State responds that evidence of the lack of endorsement was not relevant to the decedent's ability to ride and had no connection to the question whether Defendant's driving proximately caused the decedent's death. We review the court's decision under the abuse of discretion standard. *State v. Knecht*, 1997 SD 53, ¶ 7, 563 N.W.2d 413, 417 (additional citation omitted).

[¶ 8.] To prove that Mollman was guilty of vehicular homicide, the State was required to prove beyond a reasonable doubt that Mollman:

1. was under the influence of an alcoholic beverage;

2. did not have a "design to effect death";

3. drove his vehicle in a negligent manner; and

4. thereby caused Severson's death.

SDCL 22–16–41. This statute requires a showing by the State that Defendants negligence was a proximate cause of the decedents death. See generally, *State v. Two Bulls*, 1996 SD 53, 547 N.W.2d 764.

[¶ 9.] This Court first addressed the issue of proximate causation under the vehicular homicide statute in *Two Bulls*, 1996 SD 53, 547 N.W.2d 764. We noted that a finding of ordinary negligence is sufficient to establish vehicular homicide and therefore the appropriate standard of causation is "that employed by tort law." *Two Bulls*, 1996 SD 53 at ¶ 12, 547 N.W.2d at 766 (citing *Commonwealth v. Berggren*, 398 Mass. 338, 496 N.E.2d

---

\* SDCL 32–20–2 provides in part:

No person may operate a motorcycle ▯ on the public streets or highways without a motor vehicle driver's license or permit upon which a state testing officer has certified that such person is qualified to operate such motorcycle. ▯ The department may waive the testing requirements upon completion of a motorcycle safety course approved pursuant to 32–20–14. A violation of this section is a Class 2 misdemeanor.

660, 661–62 (1986)). Under tort law, the negligence of two or more can combine to cause the injury and each of the negligent actors may be held liable for the injury. *Two Bulls*, 1996 SD 53 at ¶ 13, 547 N.W.2d at 766 (citing W. Page Keeton, et al, Prosser and Keeton on Torts § 52 at 347–349 (5th Ed. 1984)) (additional citations omitted). Therefore, we held:

> The negligence of another does not prevent conviction for vehicular battery or homicide, so long as the defendant's negligence is also a proximate cause of the victim's injuries or death.

*Id.* (citing *State v. Theuring*, 46 Ohio App.3d 152, 546 N.E.2d 436, 438 (1988)). We accepted the proposition that:

> [T]he negligence or unlawful acts of another driver which proximately contributed to the death, as distinguished from an independent intervening cause thereof, [are] not a defense if the evidence is sufficient to sustain a conclusion beyond a reasonable doubt that the defendant's negligence or unlawful acts were also a proximate cause of the death of another.

*Id.* (quoting *State v. Rotella*, 196 Neb. 741, 246 N.W.2d 74, 76 (1976) (additional citations omitted)). Simply stated, "The deceased's negligence is irrelevant absent evidence that would support a finding that [it] amounted to an independent intervening cause[.]" *State v. Lamont*, 2001 SD 92, ¶ 17, 631 N.W.2d 603, 609 n2 (quoting *State v. Dionne*, 442 A.2d 876, 887 (R.I. 1982)). However, the defense is certainly entitled to present evidence that the decedent's actions constituted an independent intervening cause of death. *Lamont*, 2001 SD 92 at ¶ 15, 631 N.W.2d at 608 (citations omitted).

[¶ 10.] This Court has defined independent intervening cause, stating:

> When the natural and continuous sequence of causal connection between the negligent conduct and the injury is in-

terrupted by a new and independent cause, which itself produces the injury, that intervening cause operates to relieve the original wrongdoer of liability. However, the intervening cause must be a superseding cause. It must so entirely supersede the operation of the defendants negligence that it alone, without his negligence contributing thereto, produces the injury.

*Braun v. New Hope Township*, 2002 SD 67, ¶ 10, 646 N.W.2d 737, 740 (citing *Schmeling v. Jorgensen*, 77 S.D. 8, 18, 84 N.W.2d 558, 564 (1957) (internal citations omitted)).

[¶ 11.] After the State made its motion to prohibit evidence of the lack of a motorcycle endorsement, the trial court requested that the defense present an offer of proof on the issue. The trial court instructed the defense attorney:

> Now, Mr. Davis (defense counsel), in *Lamont* the Supreme Court remanded the case to the trial court and indicated that it was necessary to present authority [], it wasn't a remand with direction to allow it, but rather requiring the defense to make an offer of proof. Now, in your response to the plaintiffs motions in limine, the Court wants a very specific offer of proof from you regarding the expert testimony you intend to present and how it would be appropriately introduced at trial.

After argument, the court inquired of defense counsel "how could failure to have a motorcycle endorsement [] be an independent intervening cause in this case?" Defense counsel responded, "a motorcycle endorsement in and of itself suggests that an individual is competent to operate a motorcycle." Defense counsel then concluded that without a motorcycle endorsement, "negligent and uninformed operation of that vehicle would likely be a proximate

cause of any accident[.]" The trial court found:

> [A]s presented in the offer of proof [lack of an endorsement], is completely speculative as to this individual decedents ability and as to the facts that occurred on the evening in question. It provides no relevant testimony. It has no connection to the element that the negligent conduct of—the negligent driving of Mr. Mollman was the proximate cause of the death of Gary Severson.

(Emphasis supplied.) On the second day of trial, Defendant made a second offer of proof on the endorsement issue and was again denied. In the second offer of proof, the defense argued that allowing the decedents wife to testify that the decedent "did love that bike" in response to a question about his hobbies, led the jury to the conclusion that he was a competent rider. The defense argued that the statement by the decedent's wife opened the door to the question of decedent's competence as a rider and therefore the defense should be entitled to "correct this misleading impression."

[¶ 12.] In *Lamont*, this Court remanded the case to the trial court with the instruction that it was "incumbent upon Lamont to present authority and clearly state why such questioning should be allowed." *Lamont*, 2001 SD 92 at 17, 631 N.W.2d at 609. We went on to require that "Lamont must show that the victim's intoxication level is related to the issue of proximate cause, not contributory negligence." *Id.* In this case, Defendant was allowed to make two offers of proof. At neither time did counsel show how decedent's lack of endorsement constituted "a new and independent cause, which itself produce[d] the injury." *Braun*, 2002 SD 67 at ¶ 10, 646 N.W.2d at 740 (citing *Schmeling*, 77 S.D. at 18, 84 N.W.2d at 564). There simply was no evidence of

any negligence on the part of Severson to affect proximate cause. In addition, it can be argued that the trial court did not abuse its discretion in this ruling because it had previously ruled that Mollman's driving on a suspended license was also inadmissible. Nor did counsel show that the lack of endorsement so "entirely supersede[d] the operation of the defendant's negligence that it alone, without his negligence contributing thereto, produce[d] the injury." *Id.* Unlike *Lamont*, if this case were reversed and remanded on this issue, Defendant would be given another "bite at the apple," for he was given ample opportunity to show that the lack of endorsement was an intervening/superseding cause of the decedents death and he failed to do so.

[¶ 13.] Defendant failed to establish that the trial court abused its discretion in granting the State's motion to preclude evidence of the lack of motorcycle endorsement.

[¶ 14.] **2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE STATE TO SHOW THE JURY A PHOTO OF THE DECEDENT AND HIS WIFE.**

[¶ 15.] Prior to trial, Mollman filed a motion in limine requesting the State be prohibited from showing the jury a photo of the decedent and his wife. Mollman argued that the photograph was irrelevant and that its prejudicial impact outweighed its probative value. The trial court denied Defendant's motion. Mollman asserts the trial court abused its discretion.

[¶ 16.] Photographs are admissible if they "accurately portray anything that a witness may describe in words" or they are "helpful in clarifying a verbal description of objects and conditions." *State v. Owens*, 2002 SD 42, 89, 643

N.W.2d 735, 756–757. The photographs must be relevant to a material issue. *Id.* (citing *State v. Holland,* 346 N.W.2d 302, 307 (S.D.1984)). As long as they are relevant, photographs are not rendered inadmissible "merely because they incidentally tend to arouse passion or prejudice." *Id.* (additional citations omitted).

[¶ 17.] Mollman argues that the photograph of the decedent and his wife was not relevant because he offered to stipulate to the identity of the decedent. The State counters that the defense is not entitled to stipulate the State's case away and that the State was still required to prove every element of the crime beyond a reasonable doubt. The trial court agreed with the State and held that the photograph was relevant to the issue of identity and that the State was entitled to show that the decedent was "imbued with a spark of life" and to "present the victim as a human being." *State v. Carney,* 649 N.W.2d 455, 463 (Minn.2002) (citing *State v. Graham,* 371 N.W.2d 204, 207 (Minn.1985)).

[¶ 18.] We review the trial court's admission of the photograph under the abuse of discretion standard. *Owens,* 2002 SD 42 at ¶ 88, 643 N.W.2d at 756 (additional citations omitted). In determining whether a photograph should be admitted, the trial court is to weigh the probative value of the picture against the "danger of prejudice to the [defendant] through needless arousal of the passions of the jurors." *State v. Kane,* 266 N.W.2d 552, 558 (S.D.1978) (overruled on other grounds). Among the elements the State must prove is the identity of the decedent. The State chose to do so through introduction of the photograph during direct examination of the decedent's widow. We have consistently held that the State is not bound by a defendant's offer to stipulate to facts. *Owens,* 2002 SD 42 at ¶ 91, 643 N.W.2d at 757 (citing *State v. Eagle Star,*

1996 SD 143, ¶ 26, 558 N.W.2d 70, 75–76; *State v. Muetze,* 368 N.W.2d 575, 586 (S.D. 1985)). Mollman's argument that the photograph lost its relevance based on his offer to stipulate to the decedent's identity fails.

[¶ 19.] Furthermore, Mollman fails to show how the photograph prejudiced him. The photograph merely depicts the decedent and his wife. The jury was already aware that the decedent was married because the widow was testifying and there was nothing about the photograph that could be considered inherently prejudicial. We agree with the Minnesota Supreme Court's determination that even though the victim's personal life is not per se relevant to Defendant's negligence, the State is entitled to show the victim as a living human being. *See Carney,* 649 N.W.2d at 463. Mollman has not shown that the trial court abused its discretion in allowing the picture of the decedent to be shown to the jury, nor has he shown that he was prejudiced by introduction of the picture. The trial court's decision to permit the picture to be shown is affirmed.

[¶ 20.] **3. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL.**

[¶ 21.] Mollman was in custody during his trial because he was unable to post bond. A deputy was assigned to accompany Mollman through the proceedings and to escort him to and from court. During jury voir dire, the trial court took a recess. As jurors and potential jurors were leaving the room, the deputy approached Defendant, told him that the deputy needed to use the restroom and required Defendant to accompany him. The deputy and Defendant left the courtroom together. The defense moved for a mistrial on the basis that some potential jurors saw the interac-

tion between the deputy and Defendant and were presumably prejudiced by this "indicia of incarceration." The trial court heard the motion and held:

> Well, the court is going to deny the motion for a mistrial. The jurors were filing out of the courtroom. There were just a couple of jurors that even saw the deputy approach from the side here.
>
> Mr. Mollman, the court certainly has no reason to believe there was any conversation overheard by any prospective juror and the court believes that in fact no prejudice has been created here in the minds of any potential juror and that there [are] no just grounds for a mistrial.

Mollman asserts the holding was error because the deputy's action made Defendant's "captive status" apparent to the jurors and therefore prejudiced his right to a fair trial.

[¶ 22.] Mollman relies on cases which hold that, as a general rule, a criminal defendant has the right to appear before a jury "free from shackles or other physical restraints." *State v. Weatherford*, 416 N.W.2d 47, 52 (S.D.1987) (additional citations omitted). Mollman was not dressed in prison garb, nor was he in shackles or other physical restraints. There is no evidence in the record, and Mollman does not argue that the deputy physically guided him out of the courtroom or even touched him. Mollman argues that he was nonetheless prejudiced because the potential jurors could have been led to believe that he was in custody.

[¶ 23.] We review the trial court's denial of a mistrial under the abuse of discretion standard. *State v. Anderson*, 2000 SD 45, ¶ 36, 608 N.W.2d 644, 655. In order to justify a mistrial, the defendant must make an actual showing of prejudice. For purposes of determining whether there are grounds for a mistrial, there

must be error "which, in all probability, [ ] produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Id.* (citations omitted).

[¶ 24.] Courts must guard against the prejudice that can arise when a defendant is compelled to appear before the jury either physically restrained or in prison garb. However, the defendant's right to be free from restraint is not absolute. The trial court must balance the interest of the court in maintaining security of the court officers, defendant and jury against the interest of the defendant in appearing free of physical restraint. *Weatherford*, 416 N.W.2d at 53. Mollman was not compelled to appear before the jury with any physical restraints. However, a defendant is presumed innocent and this presumption can be effective only if "courts guard against practices which unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion." *Weatherford*, 416 N.W.2d at 53. Therefore, the use of physical restraints or prison garb are not the only instances where an indication to the jury that a defendant is in custody may lead to prejudice. Defendant urges the Court to hold that inadvertently allowing potential jurors to see the deputy escort Defendant out of the courtroom was per se prejudicial.

[¶ 25.] We have held that when a courtroom arrangement has been challenged as being inherently prejudicial, the question is "not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *Id.* (citing *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)). Mollman failed to establish that the facts here led to an unacceptable

risk that the jury considered impermissible factors.

[¶ 26.] Apparently, the trial court observed the interaction between the deputy and Defendant and came to the conclusion that the potential jurors did not overhear their conversation. Assuming the potential jurors saw the interaction, all they saw was the deputy approaching Defendant, speaking briefly, and the two leaving the courtroom together. There is no indication that Defendant was handcuffed or that the deputy physically compelled him from the courtroom.

[¶ 27.] The United States Supreme Court has held that the "conspicuous [] deployment of security personnel in a courtroom during the trial is [not] the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest[.]" *Holbrook*, 475 U.S. at 568–69, 106 S.Ct. at 1346, 89 L.Ed.2d at 534. The court noted that there was a wide range of inferences a jury could draw from the deployment of security in the courtroom. We believe this case is more analogous to *Holbrook* than to those cases dealing with bringing a shackled prisoner before the jury. In this instance, any number of inferences could be drawn from Defendant leaving the courtroom with the deputy. Even assuming the potential jurors came to the conclusion that Defendant was in custody based on this encounter, this would be insufficient to show prejudice. For example, courts have consistently held that brief, inadvertent meetings between jurors and a shackled defendant are insufficient to show prejudice. *Harrell v. Israel*, 672 F.2d 632, 637 (7th Cir.1982) (citing *United States v. Figueroa–Espinoza*, 454 F.2d 590 (9th Cir.1972); *United States v. Leach*, 429 F.2d 956 (8th Cir.1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); *Hardin v. United States*, 324 F.2d 553 (5th Cir.1963)). If a juror sighting of a shackled prisoner is insufficient to amount to prejudice, then certainly this brief encounter where the officer exercised nothing but verbal control over Defendant is insufficient to establish the prejudice necessary to warrant a mistrial. Finally, as the Supreme Court noted in *Holbrook*, the defendant's right to be free from restraints:

[D]oes not mean [] that every practice tending to single out the accused from everyone else in the courtroom must be struck down. Recognizing that jurors are quite aware that the defendant appearing before them did not arrive there by choice or happenstance, we have never tried, and could never hope, to eliminate from trial procedures every reminder that the State has chosen to marshal its resources against a defendant to punish him for allegedly criminal conduct.

*Holbrook*, 475 U.S. at 567, 106 S.Ct. at 1345, 89 L.Ed.2d at 533–534. The trial courts refusal to grant a mistrial is affirmed.

[¶ 28.] **4. WHETHER MOLLMAN'S SENTENCE VIOLATES THE EIGHTH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.**

[¶ 29.] Mollman argues that the unique facts of this case mitigate against the 15–year sentence imposed by the trial court. Specifically, he asserts that negligence, proximate cause and intoxication were "all very close questions" and that it is "difficult to justify a sentence that is at that harshest end of the spectrum." The State counters with the assertion that the trial court properly considered mitigating and aggravating factors, that Defendants BAC was .13 per cent and that he failed several field sobriety tests. The State also points

to the fact that Defendant has a long history of alcohol and drug abuse and driving offenses involving alcohol.

 [¶ 30.] In reviewing sentences for violations of the Eighth Amendment, we utilize the "grossly disproportionate" standard. We determine whether a sentence is grossly disproportionate by considering the conduct involved in the crime, relevant past conduct of the defendant and we give "utmost deference to the Legislature and the sentencing court." *State v. Pugh*, 2002 SD 16, ¶ 19, 640 N.W.2d 79, 85. Vehicular homicide is a class three felony. SDCL 22–16–41. As such, it is punishable by a sentence up to 15 years in the penitentiary and/or a $15,000 fine. SDCL 22–6–1(5). Mollman's 15–year sentence was therefore within statutory limits and this Court will give extreme deference to that sentence. *State v. Jensen*, 1998 SD 52, ¶ 62, 579 N.W.2d 613, 624.

[¶ 31.] In making its sentencing determination, the court looked at the mitigating and aggravating circumstances. The trial court noted that there were a number of aggravating factors. First, throughout much tragedy in his life, Mollman continued using illegal drugs and alcohol. He has a long history of drug and alcohol related offenses. At the time of this accident, Defendant was driving on a suspended license. The trial court stated, "the victim in this case was tragically and senselessly slaughtered by the conduct of Mr. Mollman." Recognizing that "slaughtered" was a "strong word," the court noted that it had "presided over the trial and viewed the photographic evidence which showed this vehicle and this motorcycle striking with tremendous force." The court stated that victim had "no notice, no preparation, no defense, no way to avoid impending death and this taking of the human life, the court finds, to be an aggravation." Based on these circumstances

and the court's concern with protecting Defendant and members of the public, the court came to the conclusion that Defendant should be sentenced to 15 years. We also note that Defendant will be eligible for parole in 3.8 years. The Defendant has failed to show that the sentence was grossly disproportionate. Affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.