2004 SD 53

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Brandon Lee HERRMANN, Defendant and Appellant.**

**No. 22892.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 2004.

Decided April 21, 2004.

Lawrence E. Long, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, SD, Attorney for plaintiff and appellee.

Darren Magee, Office of the Minnehaha Co., Public Defender, Sioux Falls, SD, Attorney for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] After a jury convicted Brandon Lee Herrmann of kidnapping and raping a seven year old child, Herrmann was sentenced to life imprisonment in the South Dakota State Penitentiary without the possibility of parole. On appeal, Herrmann argues the trial court abused its discretion when it allowed into evidence particular photographs and videotape demonstrating the injuries sustained by the victim. He also challenges the trial court's decision to admit certain hearsay statements made by the victim. Finally, Herrmann contends his life sentence must be overturned as grossly disproportionate. For the reasons set forth in this opinion, we reject Herrmann's claims and affirm his sentence.

### FACTS AND PROCEDURE

[¶ 2.] On the morning of December 19, 2001, Mother dropped off her seven year old daughter P.V. at Friend's residence in Sioux Falls, South Dakota. Mother's work day began earlier than the start of P.V.'s school day, and she often took her daughter to Friend's house so P.V. would have a safe place to stay before school. P.V. generally walked to school with her friends from the neighborhood, but on this particular morning the other children had already left for school. A neighborhood teenager offered to walk P.V. to school, but she declined and proceeded to walk to school by herself.

[¶ 3.] At approximately 10:30 a.m., a school official left a message on Friend's telephone informing him that P.V. had not made it to school. He received the message during his lunch break and immediately contacted Mother. Soon thereafter, law enforcement began searching for P.V.

Later that day, Detective David Dunteman found P.V. wandering in the area where she had last been seen. P.V. told Detective Dunteman that she had been picked up on her way to school by a man and a baby. She also said that the man had fed her lunch and given her a bath. Further investigation revealed the presence of both blood and fecal matter in P.V.'s panties. Medical personnel then uncovered evidence that P.V. had been sexually assaulted resulting in extensive trauma to both her vaginal and rectal areas.

[¶ 4.] Eventually, law enforcement determined the sexual assault occurred at the residence of Jason Frye. Although Frye admitted to participating in the crime, Frye insisted Herrmann forced him to take part in the assault. As part of a plea agreement, Frye pleaded guilty to kidnapping P.V. and received a sentence of thirty-five years in the South Dakota State Penitentiary. A grand jury subsequently indicted Herrmann on two counts of Kidnapping and one count of Rape in the First Degree.

[¶ 5.] Frye testified for the State at Herrmann's trial and related the following version of events. According to Frye, he received several phone calls from Herrmann on the morning of the crime. In one of the calls, Herrmann told Frye he had a "surprise" for him. Herrmann then took P.V. to Frye's house and told him he wanted to rape the little girl. Herrmann, Frye, P.V., and Frye's young son proceeded upstairs to Frye's bedroom. Frye told his son to go to his room and shut the door. After Herrmann asked Frye to assault the girl, Frye penetrated P.V.'s vagina with his finger but stopped when he noticed she was bleeding. Herrmann proceeded to penetrate the victim's vagina with his finger and penis. Frye testified P.V. cried in pain throughout the assault and pleaded with Herrmann to stop. Frye also testi-

fied Herrmann indicated he had ejaculated into the victim.

[¶ 6.] After this assault, Frye fed his son and P.V. macaroni and cheese. Herrmann then told Frye he wanted to rape P.V. again, and he directed Frye to take the girl's clothes and wash them. While Frye washed the clothes, Herrmann raped P.V. anally. Herrmann proceeded to bathe P.V. and use a douche on her. Frye further testified Herrmann told him he had previously molested the girl in his car. This assault resulted in bloodstains in Herrmann's vehicle. DNA testing concluded the blood stains were from P.V. Frye and Herrmann later dropped off P.V. in the area near her school.

[¶ 7.] In addition to Frye's testimony concerning the rape, the trial court allowed into evidence certain statements made by P.V. to law enforcement and Colleen Brazil of Child's Voice. The State also called as a witness Dr. Richard Kaplan, the pediatrician who had examined P.V. shortly after she was found. Dr. Kaplan testified P.V.'s injuries were the result of rape and consistent with trauma caused by an adult male penis. In order to demonstrate the extent and nature of P.V.'s injuries, the trial court allowed into evidence certain photographs, videotape, and medical testimony. The State further presented evidence that the semen found in P.V.'s panties matched a sample of Herrmann's DNA. At the conclusion of the trial, a jury returned a verdict finding Herrmann guilty on all three counts. Herrmann was sentenced to life imprisonment without the possibility of parole for Kidnapping and received a second life sentence for Rape in the First Degree. He now raises the following issues for our review:

1. Whether the trial court abused its discretion when it allowed the State to present certain photographs and

videotape demonstrating the injuries sustained by P.V.

2. Whether the trial court abused its discretion when it admitted certain hearsay statements made by P.V. pursuant to SDCL 19–16–38.

3. Whether Herrmann's life sentence for kidnapping and rape was grossly disproportionate in violation of the Constitutional prohibition against cruel and unusual punishment.

## STANDARD OF REVIEW

[¶ 8.] Herrmann seeks to challenge several evidentiary rulings made by the trial court. On appeal, this Court presumes a trial court's evidentiary rulings were proper and will affirm absent an abuse of discretion. *State v. Perovich*, 2001 SD 96, ¶ 11, 632 N.W.2d 12, 15. While the "ultimate decision to admit or not admit evidence is reviewable under the 'abuse of discretion' standard, the court's preliminary determination of whether the hearsay evidence is reliable will not be overturned unless it is clearly erroneous." *State v. Davi*, 504 N.W.2d 844, 849 (S.D. 1993) (citing *Matter of R.S.S.*, 474 N.W.2d 743, 749 (S.D.1991)). In addition, we will not reverse unless error is "demonstrated ... [and] shown to be prejudicial error." *State v. Smith*, 1999 SD 83, ¶ 39, 599 N.W.2d 344, 353.

[¶ 9.] Herrmann also seeks to have his life sentence overturned on the grounds it was grossly disproportionate in violation of the Eighth Amendment. We employ a limited review to challenges based upon the proportionality of a particular sentence. *State v. Milk*, 2000 SD 28, ¶ 10, 607 N.W.2d 14, 17. This Court gives great deference to decisions made by the Legislature and sentencing courts, and sentences within the statutory maximum will rarely be overturned on appeal. *State v. Garber*, 2004 SD 2, ¶ 13, 674 N.W.2d

320, 323 (quoting *State v. Bonner*, 1998 SD 30, ¶ 14, 577 N.W.2d 575, 579); *Milk*, 2000 SD 28, ¶ 10, 607 N.W.2d at 17.

## ANALYSIS AND DECISION

[¶ 10.] **1. Whether the trial court abused its discretion when it allowed the State to present certain photographs and videotape demonstrating the injuries sustained by P.V.**

[¶ 11.] The trial court allowed the State to present certain video and photographic evidence showing the extent of the injuries sustained by P.V. as a result of the sexual assault. The photographs were still images generated from a video tape of a forensic exam conducted by Dr. Kaplan. Herrmann's counsel unsuccessfully objected to the photographic evidence on the grounds it was unfairly prejudicial to the defendant and would only serve to arouse the passion or prejudice of the jury. Herrmann now renews this argument on appeal. We review the trial court's decision to admit the photographic evidence under the abuse of discretion standard. *State v. Knecht*, 1997 SD 53, ¶ 7, 563 N.W.2d 413, 417.

[¶ 12.] To begin, we note when a defendant pleads not guilty, the State has the burden of proving every element of the crime. *State v. Mollman*, 2003 SD 150, ¶ 17, 674 N.W.2d 22, 28. The State has the right to present its case in any manner it sees fit so long as it stays within the evidentiary rules, and "[w]e have consistently held that the State is not bound by a defendant's offer to stipulate to facts." *Id.*, ¶ 18. In this case, because one of the charges against Herrmann was rape, the State had the burden of proving penetration. In order to show penetration, the State offered photographs of P.V.'s injuries obtained from the medical exam conducted shortly after she was

found. A trial court may admit photographs into evidence if they " 'accurately portray anything that a witness may describe in words' or they are 'helpful in clarifying a verbal description of objects and conditions.' " *Id.,* ¶ 16 (quoting *State v. Owens,* 2002 SD 42, ¶ 89, 643 N.W.2d 735, 756–57). The trial court found the photographs at issue would be helpful to the jury in understanding the medical testimony of Dr. Kaplan. In fact, Dr. Kaplan testified that non-medically trained individuals might not even be able to tell there were injuries depicted in the video without sufficient medical explanation. Given Dr. Kaplan's testimony and considering the State's ability to present its evidence in the manner it sees fit, we believe the photographic evidence was relevant in order to show penetration.

■■■ [¶ 13.] Under SDCL 19–12–3 (Fed R Evd 403) a trial court may refuse to allow relevant evidence that is unfairly prejudicial to a defendant:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■■■ We have defined unfair prejudice as "evidence that has the capacity to persuade by illegitimate means." *Knecht,* 1997 SD 53, ¶ 12, 563 N.W.2d at 419. As noted, the trial court determined the pho-

tographs had probative value in assisting Dr. Kaplan's testimony, and it concluded their admission into evidence would not unfairly prejudice Herrmann. Specifically, the court observed that the photographs only depicted the damaged areas of P.V.'s body and were not pictures of the entire child. Photographs relevant to a material issue do not become inadmissible "merely because they incidentally tend to arouse passion or prejudice." *Mollman,* 2003 SD 150, ¶ 16, 674 N.W.2d at 28. Herrmann has failed to show the trial court abused its discretion by allowing the State to appeal to the jury by illegitimate means. As we reiterated in *Knecht* "[j]ust because the [evidence was] harmful to [Defendant] does not mean [it was] unfairly prejudicial." 1997 SD 53, ¶ 12, 563 N.W.2d at 419 (quoting *State v. Brings Plenty,* 459 N.W.2d 390, 399 (S.D.1990) (citation omitted)). In this case, the trial court believed the probative value of the photographic evidence used by the State to show the trauma caused by penetration was not substantially outweighed by any unfair prejudice to Herrmann, and we do not believe it abused its discretion when it allowed the photographs into evidence.

[¶ 14.] **2. Whether the trial court abused its discretion when it admitted certain hearsay statements made by P.V. pursuant to SDCL 19–16–38.**

■■■ [¶ 15.] The trial court determined P.V. was unavailable as a witness according to SDCL 19–16–29, and pursuant to SDCL 19–16–38,[1] it allowed the

---

1. A statement made by a child under the age of ten, or by a child ten years of age or older who is developmentally disabled as defined in § 27B–1–3, describing any act of sexual contact or rape performed with or on the child by another, or describing any act of physical abuse or neglect of the child by another, or any act of physical abuse or neglect of another child observed by the child making the statement, not otherwise admissible by statute or court rule, is admissible in evidence in

criminal proceedings against the defendant or in any proceeding under chapters 26–7A, 26–8A, 26–8B and 26–8C in the courts of this state if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

State to offer certain hearsay statements she made to law enforcement officials and Colleen Brazil of Child's Voice. On appeal, Herrmann challenges the trial court's ruling that P.V. was unavailable. Herrmann further believes the State's use of these hearsay statements violated the Confrontation Clause of the Sixth Amendment. We review the trial court's ruling under the abuse of discretion standard. *Davi*, 504 N.W.2d at 849 (citation omitted).

[¶ 16.] SDCL 19–16–29 (Fed. R. Evd. 804(a)) provides in relevant part:

"Unavailability as a witness" includes situations in which the declarant:

. . . .

(2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

. . . .

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under § 19–16–31, 19–16–32 or 19–16–33, his attendance or testimony) by process or other reasonable means.

[¶ 17.] At a hearing on Herrmann's motion to suppress the hearsay statements at issue, Dr. Cynthia Pilkington, a child psychologist who conducted several therapy sessions with P.V., testified that the child would be traumatized if she were forced to testify at trial. Qualified to testify as an expert, Dr. Pilkington diagnosed P.V. as suffering from post-traumatic stress disor-

der. Dr. Pilkington also related that P.V. would not speak about the assault to anyone except her, and only in her office. In fact, Dr. Pilkington believed if P.V. was forced to see Herrmann face to face it would severely upset the child and set her back a year's worth of trust. Finally, Dr. Pilkington testified that P.V.'s comments about the incident had remained consistent during their therapy sessions together, and she believed P.V. understood the difference between truth and fabrication.

[¶ 18.] P.V.'s father also testified at the motion hearing. According to the child's father, P.V. was told at one point she would have to speak about the assault at a hearing. Upon learning this, P.V. jumped into her father's lap, clenched his arm, and refused to talk. Based on this behavior, P.V.'s father agreed it would be harmful to his daughter to testify, and he decided he would not bring her to the hearing.

[¶ 19.] Based upon the testimony at the motion hearing, the trial court determined P.V. was unavailable to testify under subsections (2) and (5) of SDCL 19–16–29. In addition, the trial court specifically found that her unavailability was not due to any wrongdoing on the part of the State. Considering the facts of this case and after a review of the record, we believe Herrmann has failed to show that the trial court abused its discretion by declaring P.V. to be unavailable to testify. Our conclusion is further bolstered by the fact that Herrmann has not challenged the reliability of the hearsay statements.

---

(a) Testifies at the proceedings; or
(b) *Is unavailable as a witness.*
However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, in-

cluding the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement. (emphasis added). Herrmann's appeal focuses on the trial court's determination that P.V. was unavailable as witness. In his brief to this Court, he does not challenge the reliability of the hearsay statements.

[¶ 20.] Herrmann also challenges the admission of the statements under SDCL 19–16–38 as a violation of his right to confront the witnesses against him. Under the Sixth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment, a defendant has the right to confront the State's witnesses.[2]

[¶ 21.] After his case was submitted to this Court for consideration, the United States Supreme Court rendered its decision in *Crawford v. Washington*, —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177, (2004). In *Crawford*, the Supreme Court overruled *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which had allowed admission of out of court testimonial statements possessing a firmly rooted hearsay exception or containing "particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. at 2539.[3] *Crawford* no longer allows admission of *ex parte* out of court testimonial statements as they are deemed to be in violation of the Confrontation Clause. —— U.S. at ——, 124 S.Ct. at 1374. For admissibility, *Crawford* requires unavailability plus a prior opportunity by the defendant for cross-examination. *Id.*

[¶ 22.] Although the Supreme Court's opinion in *Crawford* rested in large part on the relationship between the Confrontation Clause and "testimonial evidence," it did not actually define what constitutes a "testimonial" statement. *Crawford* did indicate, however, that testimonial evidence includes "police interrogations." *Id.* Herein, P.V. made statements to Coleen Brazil of Child's Voice and two police officers.

[¶ 23.] In this case, we need not determine whether any of these statements were testimonial in nature simply because of their contents' relevancy to the charge of rape and the charge of kidnapping. We conclude that *Crawford* is distinguishable as to Herrmann's rape conviction because P.V. never made incriminatory statements to anyone about any sexual acts perpetrated upon her. As far as the kidnapping charge, she did indicate she was picked up and taken away by a person she did not know. However, she did not identify Herrmann as the kidnapper. It is uncontested that she was kidnapped. The contested issue for the jury was whether the State had proved beyond a reasonable doubt that the identity of the kidnapper was Herrmann. Even if P.V.'s comments could be characterized as impermissible testimonial statements under *Crawford*, it would be harmless error as there is no identification by P.V. of Herrmann being the kidnapper. Additionally, the overwhelming DNA evidence in this case strongly suggests that error, if any, in admitting P.V.'s statements was harmless. We affirm on this issue.

[¶ 24.] **3. Whether Herrmann's life sentence for kidnapping and rape was grossly disproportionate in violation of the Constitutional prohibition against cruel and unusual punishment.**

[¶ 25.] Herrmann argues that his two life sentences were disproportionate to the thirty-five year sentence given Frye for his participation in the same events for which he was convicted.

---

**2.** Article VI, section 7 of the South Dakota Constitution also grants a defendant the right to "meet the witnesses against him face to face."

**3.** Applying the factors set forth in *State v. Cates*, 2001 SD 99, ¶ 11, 632 N.W.2d 28, 34, the trial court found the statements to be reliable. There is no evidentiary or legal basis to overturn this finding.

[¶ 26.] Initially, we review the sentencing court's decision under the abuse of discretion standard. *State v. Stahl*, 2000 SD 154, ¶ 13, 619 N.W.2d 870, 874. In addition, "[i]t is well-settled that we employ very limited principles in our constitutional review" of a particular sentence. *Garber*, 2004 SD 2, ¶ 28, 674 N.W.2d at 327. In *Bonner*, this Court outlined the applicable test for reviewing the proportionality of a given sentence:

[T]o assess a challenge to proportionality we first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends. If, on the other hand, the sentence appears grossly disproportionate, we may, in addition to examining the other *Solem* factors, conduct an intra-and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.

1998 SD 30, ¶ 17, 577 N.W.2d at 580(citing *Harmelin v. Michigan*, 501 U.S. 957, 1000, 111 S.Ct. 2680, 2704, 115 L.Ed.2d 836, 868 (1991)). Given our level of deference to the Legislature and sentencing court, we rarely overturn sentences within the statutory maximum. *Garber*, 2004 SD 2, ¶ 28, 674 N.W.2d at 327.

[¶ 27.] A jury convicted Herrmann for Kidnapping and Rape in the First Degree. SDCL 22–19–1; SDCL 22–22–1. The Legislature deemed each of these offenses to be Class 1 felonies carrying a maximum penalty of life imprisonment. SDCL 22–6–1. In this case, Herrmann abducted a seven year child who was on her way to elementary school. He violently penetrated the child on several different occasions over the course of the morning and afternoon despite her cries of agony and pleas for him to stop. Herrmann raped P.V. both vaginally and anally resulting in extensive trauma to the child. In fact, Dr. Kaplan, an experienced pediatrician testified that Herrmann's actions resulted in injuries "as severe as I've seen."

[¶ 28.] In addition to the details of the crime, a sentencing court "should acquire a thorough acquaintance with the character and history of the man before it." *Milk*, 2000 SD 28, ¶ 16, 607 N.W.2d at 19. The sentencing court received evidence of Herrmann's extensive history of sexual contact with minors. A court appointed psychologist also concluded Herrmann posed a high risk for recidivism and recommended he never be allowed unsupervised contact with minors for the duration of his life. Given the particularly heinous nature of the crimes at issue in this case and considering Herrmann's extremely limited prospects for rehabilitation, we do not believe the sentencing court abused its discretion in imposing the maximum sentence allowed under South Dakota law for these offenses.

[¶ 29.] Herrmann's constitutional challenge to the proportionality of his sentence based upon the difference between his life sentences and Frye's thirty-five year sentence is without merit. Frye fully cooperated with law enforcement to a point where he testified against Herrmann. Frye entered into a plea agreement with the State and pleaded guilty to Kidnapping. A jury convicted Herrmann of both Kidnapping and First Degree Rape. Thus, Frye and Herrmann were sentenced for different criminal acts. Furthermore, as this Court recognized in *Garber*, "we have never held that the level of culpability for an offense is always the same for each

defendant." 2004 SD 2, ¶ 33, 674 N.W.2d at 328. In this case, the evidence strongly supported the conclusion that Herrmann was the primary perpetrator of the sexual assault of P.V. Without a showing that Herrmann's and Frye's "past records, demeanor, degree of criminal involvement, etc., are sufficiently similar as to cause the sentence disparity between them to be unjust" we must defer to the sentencing court's decision. *Id.*, ¶ 32.

[¶ 30.] After presiding over trial and reviewing an extensive pre-sentence investigation report, the sentencing court chose to give Herrmann two life sentences in the South Dakota State Penitentiary without the possibility of parole. These sentences were the maximum authorized by the Legislature. Upon a review of the record before this Court, we conclude Herrmann's total sentence was proportionate to the crimes for which he was convicted. We therefore affirm his sentence.

[¶ 31.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.